[Cite as *Pollock v. Trustar Funding, L.L.C.*, 2019-Ohio-3272.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

|  |  |  |
|---|---|---|
| SUSAN POLLOCK, ET AL., | : | |
| Plaintiffs-Appellants, | : | |
| v. | : | Nos. 107355 and 107679 |
| TRUSTAR FUNDING, L.L.C., ET AL., | : | |
| Defendants-Appellees. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 15, 2019

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CV-13-819529, CV-17-884945, and CV-18-894019

*Appearances:*

Zukerman, Daiker & Lear Co., L.P.A., Larry W. Zukerman,
and S. Michael Lear, *for appellants*.

MICHELLE J. SHEEHAN, J.:

{¶ 1} Plaintiff-appellant Susan Pollock filed a lawsuit against Trustar Funding, L.L.C. ("Trustar" hereafter) and several individuals related to the company. The parties settled the lawsuit after reaching a settlement agreement, which set forth a five-year payment schedule, and the terms of the agreement were incorporated into a consent judgment journalized by the court. The defendants

subsequently failed to make the required payments and defaulted.  The defendants then proffered a new settlement agreement.  The dispute in this case was whether the trial court should enforce the original settlement agreement as incorporated in the consent judgment or the new proffered settlement agreement.  After a review of the record and applicable law, we affirm the trial court's judgments enforcing the terms of the original settlement agreement.

## Background

{¶ 2}  This case has a convoluted and confusing procedural history due in part to the zealous advocacy by plaintiff's attorney, Harold Pollock, who is also a party in the underlying action.  In the following, we summarize, to the best of our ability, the procedural history relevant to this appeal based upon the record.

{¶ 3}  In 2010, Harold Pollock, Esq., and his wife Susan Pollock obtained a short-term loan of $170,000 from Brookview Financial, Inc. to finance the purchase of a property.  Trustar was the servicer for the loan.  Trustar was a family business: Brian Stark was the president of the company, and his now ex-wife Sharon Stark and his brother Paul Stark were employees of the company.  In September 2011, the Pollocks made a $75,000 payment to Trustar as a partial payment for the loan.  An employee of Trustar, allegedly Sharon Stark, misappropriated the funds and never forwarded the payment to Brookview Financial, Inc.

## The Settlement Agreement and the Subsequent Default

{¶ 4}  To recover the misappropriated funds, the Pollocks filed a complaint in 2013 (Cuyahoga C.P. No. CV-13-819529, "*Pollock 1*" hereafter) against Trustar,

Brian Stark, Sharon Stark, Paul Stark, and other related entities. As subsequently amended, the Pollocks' complaint alleged 16 counts, including a violation of the Ohio Predatory Lending Act, breach of contract, breach of duty of good faith, request for declaratory relief, respondeat superior, conversion, promissory estoppel, fraud and misrepresentation, piercing the corporate veils, fraudulent conveyances, breach of fiduciary duty, request for specific performance, request for preliminary and permanent injunction, and violations of the Ohio Consumer Sales Practices Act.

{¶ 5} Contentious litigation ensued soon after the Pollocks filed the amended complaint. Within weeks, the docket recorded almost 20 filings from attorney Harold Pollock, who represented himself and his wife at trial, and almost ten filings from attorney J. Norman Stark,[1] Brian and Paul's father, who acted as their counsel in this case.

{¶ 6} The parties then reached a global settlement agreement in late April 2014. Under the agreement, the Stark defendants were to pay Susan Pollock $100,000, with the payment amortized over five years (around $1,854 per month) beginning with June 2014. A promissory note of $100,000 was to be executed in her favor and secured by eight properties owned by various Stark defendants, and certain late payment interest and penalties were to be paid in the event of late payments under the note.

---

[1] Attorney J. Norman Stark passed away during the pendency of this appeal. No appearance of counsel was filed by the appellee, and no appellee brief was filed in this appeal.

{¶ 7} A consent judgment entry was journalized in May 2014 by the trial court.[2] The consent judgment stated a judgment of $100,000 (amortized over five years) was entered in favor of Susan Pollock. It also referenced the purported note, but the note was not attached to the judgment and it is unclear whether such a note was ever executed by the defendants.[3]

{¶ 8} Following the settlement and the consent judgment, the Stark defendants began in July 2014 to pay Susan Pollock a monthly payment of $1,854.71, under the amortization rate provided in the settlement agreement. Three years later, after paying a total of $50,000, the Stark defendants defaulted in March 2017.[4]

**Post-Default Litigation**

{¶ 9} After the defendants defaulted in payment, the litigation in this matter resumed in earnest. Beginning in August 2017, attorney Pollock filed a flurry of motions in this case. He also filed two foreclosure actions, Cuyahoga C.P. Nos. CV117-883959 ("*Pollock 2*") and CV-17-883964 ("*Pollock 3*") (against Sharon Stark

---

[2] The consent judgment was amended several months later. The amended judgment removed a provision regarding Brookview Financial. The amendment of the consent judgment is irrelevant for purposes of this appeal.

[3] The settlement agreement itself was also not attached to the consent judgment, although the consent judgment stated that it incorporated the settlement agreement.

[4] Soon after, Brian Stark, who apparently was the party making the payments, filed for personal bankruptcy. It is undisputed, however, that the money owed to Susan Pollock was not discharged by the bankruptcy filing.

and Paul Stark's personal residences, respectively, that were granted as security for the $100,000 judgment as a part of the parties' settlement agreement). In addition, he filed a creditor's bill action against Paul Stark, Cuyahoga C.P. No. CV-17-884762 ("*Pollock 4*") and two cases claiming fraudulent conveyance (Cuyahoga C.P. Nos. CV-17-884945/"*Pollock 5*" and CV-18-894019/"*Pollock 6*") in August 2017 and March 2018, respectively, the latter against attorney Stark and his wife.

{¶ 10} The court held a hearing in October 2017, one of the six hearings the court held in this post-judgment matter. The court and the parties discussed the possibility of consolidating the August 2017 fraudulent conveyance case with the instant case. After hearing, the court issued an entry stating, "[f]or purposes of consolidation, this case is hereby reinstated." Subsequently, both fraudulent conveyance cases were transferred to the trial court's docket for consolidation with the instant case (*Pollock 1*).

**Attempt for a New Settlement**

{¶ 11} On April 20, 2018, by way of email communication, attorney Stark proposed a new payment schedule to cure the defendants' default. The proffered settlement called for a payment of $62,000, to be paid by an initial lump sum payment of $11,000, followed by an accelerated payment schedule consisting of alternating monthly payments of $5,000 and $1,000, which would conclude in August 2019. As reflected by the response time on attorney Pollock's email reply to attorney Stark, the proffer was immediately rejected.

{¶ 12} Three days later, on April 23, 2018, attorney Pollock sent an email to the staff attorney for the trial court. In the email, he claimed that Stark defendants should be precluded from seeking to enforce the original settlement agreement because they were in default. He maintained that in order to allow the Stark defendants to resume payments under the 2014 settlement agreement, they would have to pay the "$27,000 + amount in which they are in arrears." He also informed the court that attorney Stark had proffered a new settlement but he and his wife "do not believe the Stark Defendants would or could make these payments."[5]

**Dueling Motions to Enforce the Settlement Agreement, the Hearings, and Subsequent Judgment Entries**

{¶ 13} On April 27, 2018, attorney Pollock filed a motion to enforce the 2014 settlement agreement. In conjunction, he filed a motion to show cause, asking the defendants to be held in contempt for violating the settlement agreement. Three days later, attorney Norman Stark filed the defendants' own motion to enforce the 2014 settlement agreement. The defendants acknowledged their default but asked the court to permit them to resume payments under the 2014 settlement agreement.

{¶ 14} On May 21, 2018, the trial court held a hearing on the dueling motions to enforce the settlement agreement. Brian Stark testified that his ex-wife Sharon and his brother Paul had left the company and he alone carried the burden of paying for the amount owed under the 2014 settlement agreement. Attorney Pollock asked

---

[5] The April 20, 2018 and April 23, 2018 emails are attached as exhibits B and A, respectively, to the Stark defendants' motion to enforce settlement subsequently filed on April 30, 2018, and are therefore part of the appellate record.

that the defendants be required to make up for the missed payments now for the 14 months between the default in March 2017 and the present time, plus penalties for the late payments.

{¶ 15} The trial court inquired as to the circumstances surrounding the 2014 settlement and the new settlement proffered by attorney Stark in April 2017. At one point, the court stated "I'm going to enforce the settlement that they have offered," referring to the proffered settlement, to which attorney Pollock responded "okay." It is unclear what "okay" means in the context of the exchange.

{¶ 16} While the trial court appeared to show an intention to enforce the proffered settlement, which attorney Pollock had previously rejected, the court issued a judgment entry the next day, enforcing the 2014 settlement agreement instead. The May 22, 2018 entry stated:

> Defendants' motion to enforce settlement agreement is granted. All remaining claims are hereby dismissed as moot. Related foreclosure actions shall be held in abeyance until plaintiff is made whole. Plaintiff shall not engage in any further unnecessary litigation on this matter.

{¶ 17} A few weeks later, on June 12, 2018, the trial court journalized an "Order Enforcing Original Global Settlement Agreement." It clarified the previous order, adding that the 2014 settlement agreement was to be resumed as if the default had not occurred. The order stated:

> The Defendant[s] having moved to enforce the Global Settlement Agreement entered into between Trustar and Plaintiff on June 13, 2014, and the motion having come to be heard and granted May 21, 2018;

Now, on considering the Motion to Enforce Settlement, and on the testimony and evidence introduced at the hearing had on May 21, 2018, it is hereby Ordered that the Global Settlement Agreement be resumed and enforced as though there were no default.

**Plaintiff's Motion to Modify the May 22 and June 12, 2018 Orders**

{¶ 18} On June 20, 2018, attorney Pollock filed a motion to modify the court's May 22 and June 12 orders, claiming the court should have enforced the proffered settlement. He pointed to exhibit B attached to the defendants' April 30, 2018 motion to enforce the settlement agreement as evidence that the proffered settlement remained open at the time of the May 21, 2018 hearing. (Exhibit B was the April 20, 2018 email from attorney Stark to attorney Pollock that contained the proffered payment schedule of an initial lump sum payment of $11,000 followed by alternating $5,000 and $1,000 monthly payments. Also showing on Exhibit B but not mentioned by attorney Pollock in his motion was attorney Pollock's rejection of the offer in his reply email.) Attorney Pollock claimed that the parties reached an agreement regarding the proffered settlement in open court at the May 21, 2018 hearing, and he argued the court should enforce the terms of that proffer.

{¶ 19} Simultaneous with the motion to modify the court's May 22 and June 12 orders, attorney Pollock filed a notice of appeal from these orders in 8th Dist. Cuyahoga No. 107355. This court remanded the matter to the trial court to rule on attorney Pollock's motion to modify. Upon remand, the trial court held a hearing on the motion to modify its orders. The court heard from attorney Pollock, Susan Pollock, attorney Stark, and Brian Stark. Attorney Stark reminded the court that the

proffered settlement was immediately rejected by attorney Pollock and maintained that the only settlement agreement the parties reached in this matter was the 2014 settlement agreement.

{¶ 20} The court inquired about the defendants' ability to pay pursuant to the accelerated payment schedule proffered by the defendants. Attorney Stark reported that the defendants were no longer in a financial position to pay under the proposed payment terms but would be able to make payments pursuant to the 2014 settlement agreement. He also reported the defendants have tendered two payments of $ 1,854.71 pursuant to the court's orders on May 22 and June 12, 2018. One check was accepted while the other refused. Attorney Pollock, on the other hand, maintained that if the payment was to be resumed under the original settlement agreement, plaintiff should be compensated in some manner for the lack of payments during the period between the defendants' default and the resumption of payments.

{¶ 21} The trial court expressed its dismay over attorney Pollock's engagement of multiple lawsuits and excessive motion practice for the collection of a debt. The court noted that an order for examination of a judgment debtor pursuant to R.C. 2333.09 was a remedy readily available to plaintiff as a creditor. The court remarked that the plaintiff's litigation tactic unnecessarily prolonged the resolution of this debt matter and necessitated the appointment of a receiver, noting that the receiver reported after an investigation that there was no substance to plaintiff's claims of fraudulent conveyances. The court, observing that attorney Pollock had

been disciplined by the Supreme Court of Ohio for harassing conduct, described his excessive filings in the instant matter as an abuse of process.

{¶ 22} After the hearing, the court issued a judgment on August 17, 2018, denying plaintiff's motion to modify the settlement order. In its judgment, the court recited the long litany of pleadings and motions filed by plaintiffs in this case and chided attorney Pollock over his over-zealous litigation tactics. The court stated:

> Despite a global settlement agreement reached by all parties in April of 2014, Plaintiffs still attempt to get a second, third, fourth, fifth, or sixth proverbial "bite at the apple" which has created thousands of dollars of litigation costs for Plaintiffs, Defendants, and for this Court. Plaintiffs['] zealous advocacy of the within claims goes beyond the bounds of practicality, with no less than 70 separate motions and briefs filed by Plaintiff in the within action alone. From August 2017 to the present, over 3 years after the parties entered into the global settlement agreement, Plaintiffs have submitted 53 separate pleadings and motions in this matter alone. Plaintiffs' deluge of motions and pleadings is an attempt to drown the defendants in paperwork and costs, [and expenses], money which could be spent going to paying the settlement agreement the parties entered into in 2014.

{¶ 23} The court found that at least one payment of $1,854 (the monthly amount due under the consent judgment) was delivered pursuant to the court's May 22 and June 12 orders and accepted by plaintiff, and another payment was delivered to attorney Pollock's office but was refused. The court also stated that "Plaintiffs' attempts to return this matter to the active docket amount to nothing more than an attempt for a glorified debtor's examination, are in direct contravention of this court's prior order, and accordingly denied any attempts at the same." Consistent with its prior judgment entries, the court ordered the defendants

to resume payments under the 2014 settlement agreement, and it dismissed the remaining pending cases (the two fraudulent conveyance cases).[6]

{¶ 24} On appeal, appellant Susan Pollock raises two assignments of error regarding the three judgment entries entered by the court:[7]

1. The trial court erred to the prejudice of appellant and/or exceeded its jurisdiction by denying appellant's motion to enforce settlement agreement and/or by granting appellees' motion to enforce settlement agreement and/or by dismissing appellant's remaining claims as moot and holding appellant's foreclosure cases in abeyance.

2. The trial court erred to the prejudice of appellant and/or exceeded its jurisdiction by denying appellant's motion to modify settlement order and/or by ratifying the trial court's granting of appellees' motion to enforce settlement agreement by dismissing appellant's remaining claims in *Pollock 1* and dismissing *Pollock 2*, *Pollock 5*, and *Pollock 6* without prejudice.

{¶ 25} We begin our review with the recognition that "[a] settlement agreement is a contract designed to terminate a claim by preventing or ending litigation." *Infinite Sec. Solutions, L.L.C. v. Karam Properties II*, 143 Ohio St.3d

---

[6] Regarding the two fraudulent conveyance cases (*Pollock 5* and *Pollock 6*), the trial court noted the receiver's finding that the claims lacked merit at one of the hearings. On appeal, appellant does not challenge the receiver's finding. Regarding the two foreclosure cases, *Pollock 2* (Sharon Stark's personal residence) and *Pollock 3* (Paul Stark's personal residence), the court noted in the judgment that *Pollock 2* had been dismissed for plaintiffs' failure to timely file a Final Judicial Report as required under Loc.R. 24(B) of the Court of Common Pleas of Cuyahoga County, General Division. As to *Pollock 3*, attorney Pollock filed a motion to consolidate it with the instant case. The court denied the motion to consolidate, and that case apparently remains pending on the docket of a different trial judge.

[7] Eighth Dist. Cuyahoga No. 107679 concerns the court's August 17, 2018 judgment denying Susan Pollock's motion to modify the court's orders, and 8th Dist. Cuyahoga No. 107355 concerns the court's May 22, 2018 and June 12, 2018 judgment entries. The two appeals were consolidated by this court for briefing, hearing, and disposition.

346, 2015-Ohio-1101, 37 N.E.3d 1211, ¶ 16. "The law highly favors settlement agreements * * * and a trial judge generally has discretion to promote and encourage settlements to prevent litigation." *Id.*

**The Court Retains Jurisdiction to Enforce an Agreed Judgment**

{¶ 26} As an initial matter, we address the trial court's jurisdiction to take further action in this case after the court journalized the parties' consent judgment, which incorporated the terms of the underlying settlement agreement.

{¶ 27} When a party dismisses a case pursuant to a settlement agreement, the trial court has jurisdiction to enforce a settlement agreement after a case is dismissed if the dismissal entry incorporates the terms of the agreement or expressly states that the trial court retains jurisdiction. *Infinite* at syllabus.

{¶ 28} The instant case, however, is procedurally different and therefore not directly governed by the *Infinite* holding. After the parties reached the settlement agreement, they did not submit a dismissal entry. Instead, a consent (agreed) judgment entry was journalized by the court. The consent judgment entry referenced the parties' settlement agreement and incorporated the terms of the agreement, which required the Stark defendants to pay Susan Pollock $100,000 (to be amortized over five years). The judgment did not specifically dismiss the case, but rather stated that "upon completion of the payments * * * the Stark Defendants shall be deemed fully and finally released from all claims * * *."

{¶ 29} "An agreed judgment entry is the court's acknowledgment that the parties have entered into a binding contract." *Hayes v. White*, 7th Dist. Columbiana

No. 01 CO 11, 2001-Ohio-3467, ¶ 29, citing *Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 39, 285 N.E.2d 324 (1972). "[A]n agreed judgment or consent judgment is binding as if the merits had been litigated." *Id.*, citing *Gilbraith v. Hixson*, 32 Ohio St.3d 127, 129, 512 N.E.2d 956 (1987).

{¶ 30} While "[o]nce a trial court has entered a final judgment in a matter * * * a party's options for legal recourse become significantly limited," *Rocky River v. Garnek*, 8th Dist. Cuyahoga No. 97540, 2012-Ohio-3079, ¶ 7, quoting *Avon Lake Sheet Metal Co. v. Huntington Environmental Sys.*, 9th Dist. Lorain No. 03CA008393, 2004-Ohio-5957, the trial court, however, has authority to act post judgment when it enters a judgment by consent of the parties. As the Second District explained in *Grace v. Howell*, 2d Dist. Montgomery No. 20283, 2004-Ohio-4120, ¶ 9, citing 46 American Jurisprudence 2d, Judgments, Section 207:

> [c]ourts possess the general power to enter judgment by consent of the parties for the purpose of executing a compromise and settlement of the claims for relief in an action. In that judgment, which is stipulated by agreement, litigants voluntarily terminate a lawsuit by assenting to specified terms, which the court agrees to enforce as its judgment by signing and journalizing an entry reflecting the terms of the settlement agreement.

"Courts are authorized to enforce the terms of their judgments through post-judgment proceedings." *Id.* at ¶ 11. The Supreme Court also made this clear in *Infinite,* 143 Ohio St.3d 346, 2015-Ohio-1101, 37 N.E.3d 1211, at ¶ 27, summarizing the case law as follows:

> Courts have inherent authority to enforce their final judgments and decrees. *Rieser v. Rieser*, 191 Ohio App.3d 616, 2010-Ohio-6227, 947 N.E.2d 222, ¶ 5 (2d Dist.); *In re Whallon*, 6 Ohio App. 80, 83 (1st

Dist.1915). Courts also have the authority "to enter judgment by consent of the parties for the purpose of executing a compromise and settlement of the claims for relief in an action." *Grace* at ¶ 9. In a consent decree, the litigants stipulate to the termination of a lawsuit by assenting to specified terms, which the court agrees to enforce as its judgment by journalizing an entry reflecting the terms of the settlement agreement. *Id.* When the court incorporates the terms of the parties' settlement agreement into a consent decree, the court can enforce those terms as its judgment. *Nippon Life Ins. Co. of Am. v. One Source Mgt., Ltd.*, 6th Dist. Lucas No. L-10-1247, 2011-Ohio-2175, ¶ 16. [8]

*See also Cramer v. Petrie*, 70 Ohio St.3d 131, 133, 637 N.E.2d 882 (1994) ("courts have inherent authority—authority that has existed since the very beginning of the common law—to compel obedience of their lawfully issued orders").

{¶ 31} The Supreme Court of Ohio explained that the rationale for allowing the trial court to retain jurisdiction over a settlement agreement is that "[r]etaining jurisdiction provides the most efficient means of enforcing the agreement. It keeps the matter in the court most familiar with the parties' claims, if not their settlement positions. And it keeps the parties from having to file another action." *Infinite* at

---

[8] In addition, we note that Civ.R. 69 ("Execution") specifically authorizes the trial court to "direct the enforcement of the judgment." *State ex rel. Skyway Invest. Corp. v. Ashtabula Cty. Court of Common Pleas*, 130 Ohio St.3d 220, 2011-Ohio-5452, 957 N.E.2d 24, ¶ 13. Civ.R. 69 ("Execution"). Civ.R. 69 states:

> Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be as provided by law. In aid of the judgment or execution, the judgment creditor or his successor in interest when that interest appears of record, may also obtain discovery from any person, including the judgment debtor, in the manner provided in these rules.

¶ 25. This rationale applies equally here, where the consent judgment incorporated the terms of the settlement agreement.

{¶ 32} Here, although the parties styled their motions as motions to enforce the settlement agreement, the court's authority to take further actions post judgment in this case should be more accurately characterized as an exercise of its inherent authority to enforce its final judgment, and not as jurisdiction pursuant to a motion to enforce a settlement agreement following a dismissal. Construed in this manner, the trial court's exercise of jurisdiction holding hearings entertaining various post-judgment motions and ultimately issuing several orders enforcing the parties' consent judgment is not improper. *See also Ohio Serv. Group, Inc. v. Integrated & Open Sys., L.L.C.*, 10th Dist. Franklin No. 06AP-433, 2006-Ohio-6738, ¶ 3 (the parties reached a settlement agreement, the terms of which were incorporated into an agreed judgment, and the court exercised jurisdiction when plaintiff later moved to enforce the agreed judgment). As the record reflects, the trial court did not permit the underlying disputes leading to the consent judgment to be revived but appropriately limited the post-judgment litigation to the default under the settlement terms set forth in the consent judgment and plaintiff's apparent attempts at executing on the judgment.

**Standard of Review**

{¶ 33} For our review here, because agreed judgments are typically treated as contracts, *Werr v. Moccabee*, 4th Dist. Ross No. 06CA2944, 2007-Ohio-3987, ¶ 12, just like a settlement agreement, we review this matter under the same

standard of review applied to a trial court's ruling on a motion to enforce a settlement agreement. That standard depends on the question presented. If the question is an evidentiary one, we will not overturn the trial court's finding if there is sufficient evidence to support such finding. *Chirchiglia v. Ohio Bur. of Workers' Comp.*, 138 Ohio App.3d 676, 679, 742 N.E.2d 180 (7th Dist.2000). If, on the other hand, the issue is a question of contract law, we determine whether the trial court's order is based on an erroneous standard or a misconstruction of the law. *Id.*

**Issues on Appeal**

{¶ 34} Under the two assignments of error, plaintiff-appellant Susan Pollock asks this court to reverse all three judgment entries issued by the trial court and remand the matter for further proceedings. In these orders, the trial court enforced the 2014 settlement agreement and allowed the defendants to resume payments under that agreement.

{¶ 35} We first note that although appellant maintains that the parties entered into a new and enforceable settlement agreement at the May 21, 2018 hearing and the trial court was obliged to enforce this new agreement, it is unclear from her brief whether she is seeking to enforce the 2014 settlement, which contains a penalty provision to be provided in a promissory note, or the new, proffered settlement. Regardless, we first address the question of whether there was a new and enforceable settlement agreement reached in court.

**Whether a New Settlement Agreement Was Reached by the Parties**

{¶ 36} A settlement agreement is governed by contract law. *Turoczy Bonding Co. v. Mitchell,* 2018-Ohio-3173, 118 N.E.3d 439, ¶ 16 (8th Dist.). "[T]o constitute a valid contract, there must be a meeting of the minds of the parties, and there must be an offer on the one side and an acceptance on the other." *Noroski v. Fallet*, 2 Ohio St.3d 77, 79, 442 N.E.2d 1302 (1982). "'Meeting of the minds' refers to the manifestation of mutual assent by the parties of an agreement to the exchange and consideration, or to the offer and acceptance." *Tiffe v. Groenenstein*, 8th Dist. Cuyahoga No. 80668, 2003-Ohio-1335, ¶ 25, citing Restatement of the Law 2d, Contracts, Section 17, Comment c (1981). To have a meeting of the minds, "'there must be a definite offer on one side and an acceptance on the other.'" *Turoczy* at ¶ 18, quoting *Garrison v. Daytonian Hotel*, 105 Ohio App.3d 322, 325, 663 N.E.2d 1316 (2d Dist.1995). Furthermore, "[t]he relevant inquiry is the manifestation of intent of the parties as seen through the eyes of a reasonable observer, rather than the subjective intention of the parties. See 1 Corbin on Contracts (1963), Section 9; Restatement of the Law 2d, Contracts (1981), Sections 1 and 3." *Bennett v. Heidinger*, 30 Ohio App.3d 267, 268, 507 N.E.2d 1162 (8th Dist.1986).

{¶ 37} The record reflects that, after the defendants' default in 2017, the defendants' attorney, attorney Stark, proposed a new settlement that would have the defendants pay a lump sum of $11,000 to be followed by an accelerated payment schedule. This new payment schedule was proffered to the Pollocks through an

email dated April 20, 2018. However, the proffer was immediately rejected in a reply email from attorney Pollock.

{¶ 38} At the hearing held on May 21, 2018, attorney Stark reported to the court that he had proffered a new settlement with an accelerated payment schedule but it was immediately rejected by the Pollocks. Later at the hearing, the court expressed its exasperation over attorney Pollock's litigation tactics and, when attorney Pollock himself mentioned attorney Stark's proffer, the trial court responded: "I'm going to enforce the settlement that they have offered," to which attorney Pollock replied with a simple "okay."

{¶ 39} To form a binding agreement, there must be an offer and an acceptance. Here, however, the proposed settlement had already been rejected in an email reply and arguably no longer in existence at the time of the May 21, 2018 hearing — although attorney Stark's April 30, 2018 motion to enforce the 2014 settlement agreement attached an exhibit consisting of the April 20, 2018 email showing the new settlement proffered to attorney Pollock, it is unclear from attorney Stark's brief accompanying the motion whether that offer was still on the table.

{¶ 40} Furthermore, when the court appeared to express an intention to enforce the proffer, attorney Pollock's response of "okay," read in context, can hardly be construed as an unequivocal acceptance, even if the offer of the new payment terms had remained open. Pollock's response does not manifest a meeting of the minds required for a binding agreement.

**{¶ 41}** The Supreme Court of Ohio has observed that, while it is within the discretion of the trial judge to promote and encourage settlement, "[i]t is not within the province of the trial judge to enforce a purported settlement agreement when the substance or the existence of that agreement is legitimately disputed." *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 376, 683 N.E.2d 337 (1997). Although the court here stated in passing at the hearing that it would enforce the proffered settlement, a trial judge speaks as the court only through the journal of the court. *State ex rel. Ruth v. Hoffman*, 82 Ohio App. 266, 268, 80 N.E.2d 235 (1st Dist.1947). "'A decision is not the oral pronouncement of the judge made from the bench, as distinguished from the more deliberate decision of the court speaking through its journal entry.' 11 Ohio Jurisprudence, 758." *Id.* at 268. *See also*, *e.g.*, *Thompson v. State*, 8th Dist. Cuyahoga No. 99265, 2013-Ohio-1907, ¶ 5 (a judge's oral pronouncements from the bench do not constitute a decision). While the trial court may have expressed an intention to enforce the proffered new settlement at the hearing, it did not err in enforcing the only settlement agreement the parties had reached in this case — the 2014 global settlement agreement — in its subsequent journal entries.

**{¶ 42}** Finally, appellant claims the trial court erred in not awarding the 5% late payment interest and 5 dollars per day penalty on late payments set forth in the consent judgment. Our review of the consent judgment shows the penalty terms are to be provided for in a purported promissory note to be executed by the

defendants in favor of Susan Pollock,[9] but the record before us does not contain such a note. Accordingly, the trial court did not err in not enforcing the provision.

{¶ 43} Under the terms of the consent judgment, the defendants will not be released from plaintiff's claims until the judgment is satisfied. This appeal is limited to the issues of whether the court properly enforced the 2014 settlement agreement incorporated in the consent judgment (as opposed to the purported new agreement) and whether the trial court erred in allowing defendants to resume payments under the consent judgment. For the foregoing reasons, we affirm the judgments of the trial court.

**Appellant's Motion to Supplement the Record**

{¶ 44} Finally, we address a motion filed by attorney Pollock to supplement the appellate record pursuant to App.R. 9(E).[10] He asked that the numerous emails he sent to the trial court and its staff attorney be made part of the record on appeal. He claims the email communications from him to the court should be made part of

---

[9] The pertinent paragraph from the consent judgment states the following:

[I]n order to pay the aforementioned judgment amount the Stark Defendants shall execute and deliver to Susan Pollock a Cognovit Promissory Note in her favor in the amount of $100,000.00, the payment of which will be amortized over five years beginning on June 15, 2014 at an interest rate of 4% per annum, with payments to be due on the fifteenth calendar day of each month, and providing for a late fee in the amount of five percent (5%) of the payment amount, or the unpaid balance thereof, plus 5.00 dollars for each day that the payment is late * * *.

[10] Attorney Pollock has since withdrawn from this appeal, and Susan Pollock is now represented by new counsel.

the appellate record because the trial court had directed the parties to submit discovery disputes in the electronic forum. A review of the email communications attached to appellant's motion to supplement the record shows the content of the emails goes beyond discovery (or scheduling) matters. In fact, attorney Pollock appeared to be litigating by way of electronic communication; some emails contain his argument regarding the merit of his claims, replete with citations to case law authority.

{¶ 45} We first observe that while the electronic forum may be an effective method of communication regarding scheduling or procedural matters, correspondence to the court, whether in electronic format or otherwise, are not proper forums for litigating the merit of substantive issues and email communications to the court cannot be substitutes for proper motion practice.

{¶ 46} This court is a court of record, and our review of the record is confined to the record as defined in App.R. 9. *Walton v. Dynamic Auto Body*, 7th Dist. Columbiana No. 12 CO 11, 2013-Ohio-758, ¶ 4. Pursuant to App.R. 9(A), the record on appeal consists of three matters: (1) the original papers and exhibits thereto filed in the trial court; (2) the transcript of proceedings, if any; and (3) a certified copy of the docket and journal entries prepared by the clerk of the trial court. *See Pailet v. Univ. of Cincinnati Hosp.*, 10th Dist. Franklin No. 82AP-952, 1983 Ohio App. LEXIS 16069, 5 (June 30, 1983). The email communications appellant sought to include as part of the appellate record do not fall within the three categories of matters comprising the appellate record.

{¶ 47} Furthermore, regarding a modification of the record, App.R. 9(E) states:

> (E) Correction or modification of the record. If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by the trial court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated, the parties by stipulation, or the trial court, either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that omission or misstatement be corrected, and if necessary that a supplemental record be certified, filed, and transmitted. All other questions as to the form and content of the record shall be presented to the court of appeals.

{¶ 48} Although App.R. 9(E) permits supplementation of the record, it only permits addition of materials that have been "omitted from the record by error or accident." The email communications appellant seeks to supplement to the record do not meet the requirement of App.R. 9(E), and the motion is thus denied.[11]

{¶ 49} The trial court's judgments are affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

---

[11] We note that two emails *are* properly part of the appellate record: the email from attorney Pollock to attorney Stark dated April 20, 2018 (showing the new settlement proffered by attorney Stark but rejected by attorney Pollock) and an email from attorney Pollock to the court's staff attorney on April 23, 2018 (claiming the Stark defendants were precluded from seeking to enforce the 2014 settlement agreement). These emails were attached as exhibits to attorney Stark's motion to enforce the settlement agreement filed at the trial court on April 30, 2018.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

MARY J. BOYLE, P.J., and
SEAN C. GALLAGHER, J., CONCUR