[Cite as *Metron Nutraceuticals, L.L.C. v. Thomas*, 2022-Ohio-79.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

METRON NUTRACEUTICALS, L.L.C.,   :

     Plaintiff-Appellee,   :

                               No. 110280

     v.   :

CLAYTON THOMAS, ET AL.,   :

     Defendants-Appellants.   :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 13, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-16-859345

---

*Appearances:*

Lewis Brisbois Bisgaard and Smith, L.L.P., Ryan K. Rubin, Daniel Leister, and Gregory P. Amend, *for appellee.*

Luftman, Heck & Associates, L.L.P., and Matthew L. Alden, *for appellants.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant Clayton Thomas ("Thomas") appeals from the trial court's judgment that granted the motion of plaintiff-appellee Metron Nutraceuticals, L.L.C. ("Metron") to show cause why Thomas should not be held in

contempt and ordered him to pay Metron $222,360 in damages and $33,179 for its attorney fees incurred in litigating the motion. Finding no merit to Thomas's appeal, we affirm.

## I.    Substantive and Procedural Background

{¶ 2}    In 2016, Metron filed suit against Thomas and his company, Personalized Healthcare Solutions, L.L.C. ("PHS"). The complaint arose out of Metron and Thomas's business dealings.

{¶ 3}    The complaint alleged that Metron's president, Dr. Nikolaos Tsirikos-Karapanos, had invented a patent-pending process to make water-soluble hydrolyzed clinoptilolite fragments, a hydrolyzed zeolite that can be consumed to help the body eliminate toxins. The complaint further alleged that in 2014, Dr. Tsirikos-Karapanos, Thomas, and other investors founded Metron with the intention of selling the hydrolyzed zeolite under the name CytoDetox. Metron's operating agreement prohibited any member from engaging in other business ventures that utilize zeolites or chemical solutions or formulas containing zeolites. Thomas also signed a nonsolicitation, confidentiality, and noncompete agreement. Nevertheless, in August 2015, without the consent or knowledge of Metron, Thomas formed PHS, a zeolite distribution company, in direct competition with Metron. Then, again without Metron's knowledge or authorization, Thomas contacted Metron's packaging department and ordered it to ship all of Metron's remaining CytoDetox product, or 2,616 bottles, to Thomas's residence in Tacoma, Washington. Despite demands, Thomas refused to return the CytoDetox to Metron.

{¶4} Metron's complaint asserted claims against Thomas and PHS for breach of fiduciary duty, breach of the duties of loyalty and care, breach of contract, conversion and/or civil theft, violation of the Uniform Trade Secrets Act, fraud in the inducement, tortious interference with contract and business relations, and unjust enrichment. The complaint also sought temporary and permanent injunctive relief.

{¶5} After a hearing, the trial court granted a preliminary injunction. It found that the evidence presented at the hearing

> demonstrated that not only are Defendants engaging in competitive businesses in violation of contracts and agreements with Metron, but Plaintiff presented evidence of Defendants' internet-based websites and podcasts and radio publications/broadcasts that Metron opined were not authorized and amount to misinforming the public. Further, based on Plaintiff's evidence, Defendants are selling product either directly stolen from Metron or manufactured by way of violating Metron's trade secrets, patents, and confidentiality agreements. The evidence also indicated that Defendants have forged and misrepresented contracts, and Defendants have misrepresented the product, resulting in direct harm to Plaintiff. These acts also violate Thomas's fiduciary duties to Metron, as he is a shareholder.

{¶6} Subsequently, after a hearing, the trial court granted default judgment to Metron. The trial court's judgment ordered Thomas to forfeit his 15.99 percent share in Metron and pay compensatory damages and ordered permanent injunctive relief against Thomas and PHS.

{¶7} Three times thereafter, the trial court found Thomas in civil contempt of court for failing to comply with the trial court's injunction. Each time, the court had ordered various sanctions and purge conditions, none of with which Thomas

complied.  When Thomas failed to appear at a purge hearing despite an order to do so, the court found him in criminal contempt and issued a warrant for his arrest.

{¶ 8}   Thomas and PHS then filed a motion for relief from judgment.  At the hearing on the defendants' motion, the court also heard argument regarding Thomas's contempt.  The trial court found that Thomas was still in contempt, had made no effort whatsoever to purge himself of contempt, and continued to engage in activities from which he had been enjoined.  The court ordered Thomas remanded to the Cuyahoga County Jail to serve three days' imprisonment.

{¶ 9}   Subsequently, after the court denied the defendants' motion for relief from judgment, in an effort to bring finality to the matter, the parties filed a joint motion for relief from judgment requesting that the trial court enter an agreed judgment.  The trial court granted the motion and entered the agreed judgment, which among other things, ordered that Thomas and PHS were to "immediately" return to Metron all remaining bottles of CytoDetox in Thomas's possession or under his control.

{¶ 10}  In July 2020, Metron filed a motion for Thomas to show cause as to why he should not be held in contempt for failing to comply with the agreed judgment.  The trial court conducted an evidentiary hearing, after which both parties filed post-hearing briefs.  In its post-hearing brief, Metron requested its attorney fees incurred in litigating the motion.

{¶ 11}  In its journal entry granting Metron's motion to show cause (which the trial court concluded was "essentially a motion to enforce a settlement

agreement"), the trial court found that although it had ordered Thomas and PHS three times to return the 2,616 bottles of CytoDetox to Metron (i.e., in the preliminary injunction, the permanent injunction, and the agreed judgment entry), "none (zero) of the 2,616 bottles were returned." The court found that "because Mr. Thomas failed to return any of the CytoDetox bottles, in violation of the court's orders and his own agreement," Metron was entitled to $222,360 in damages, which the court determined was the fair market value of the unreturned bottles. The court also found that Thomas and PHS had violated the agreed judgment in other ways, but that Metron had not proved any damages regarding those violations.

{¶ 12} With respect to attorney fees, the court found that Metron's request for $31,609 in attorney fees and $1,570 for litigation support incurred "due to Mr. Thomas's violation of the settlement agreement" was "reasonable based on the experience of counsel and on the rate charged within this area of law in Cleveland, Ohio." Accordingly, it awarded Metron $33,179 in attorney fees. This appeal followed.

## II. Law and Analysis

### A. Damages Award

{¶ 13} In his first assignment of error, Thomas contends that the trial court abused its discretion in awarding $222,360 to Metron for his failure to comply with paragraph 9 of the agreed judgment entry, which ordered him to "immediately" return the 2,616 bottles of CytoDetox to Metron. Thomas contends that the trial court's award of $222,360 was unreasonable and against the manifest weight of the

evidence because the evidence at the hearing about whether the bottles had been returned and the value of the bottles was disputed.

{¶ 14} In arguing this assignment of error, both parties refer us to the law regarding a trial court's authority to hold a litigant in contempt. It is apparent, however, that the trial court considered Metron's motion to show cause as a motion to enforce a settlement agreement. The trial court's judgment entry stated that Metron's motion to show cause was "essentially a motion to enforce a settlement agreement." The court found that Thomas's failure to return the bottles was a violation of both "the court's orders and his own agreement." With respect to Metron's other claims regarding Thomas's violation of the agreement, the court found that although Thomas had "violate[d] the agreement," Metron had failed to show any damages as a result of the violation; damages are an element of a claim for breach of a settlement agreement. Finally, the trial court awarded attorney fees to Metron incurred in prosecuting the action because of "Mr. Thomas's violation of the settlement agreement." Thus, the court clearly considered Metron's motion to show cause as a motion to enforce a settlement agreement.[1]

{¶ 15} A trial court has the authority to enforce a settlement agreement voluntarily entered into by the parties to a lawsuit because such an agreement constitutes a binding contract. *Infinite Sec. Solutions, L.L.C. v. Karam Properties, II, Ltd.*, 143 Ohio St.3d 346, 2015-Ohio-1101, 37 N.E.3d 1211, ¶ 16.

---

[1] At oral argument, Thomas conceded the trial court's jurisdiction to consider the post-judgment motion.

{¶ 16} The party alleging the breach of a settlement agreement must establish by a preponderance of the evidence: (1) the existence of the agreement; (2) performance by the nonbreaching party; (3) breach by the other party; and (4) resulting damages or loss to the nonbreaching party. *Raymond J. Schaefer, Inc. v. Pytlik,* 6th Dist. Ottawa No. OT-09-026, 2010-Ohio-4714, ¶ 24.

{¶ 17} The parties do not dispute that they entered into a valid settlement agreement. Nor is there any dispute regarding Metron's performance under the agreement. By asserting that the evidence regarding whether the bottles were returned and the value of the bottles was disputed, Thomas is essentially arguing that the trial court erred in concluding that he breached the agreement and in calculating the resulting damages. "When parties dispute whether their respective actions were sufficient to satisfy the terms of a settlement agreement, the trial court is presented with a question of fact to decide." *Savoy Hospitality, L.L.C. v. 5839 Monroe St. Assocs., L.L.C.,* 6th Dist. Lucas No. L-14-1144, 2015-Ohio-4879, ¶ 28. Accordingly, an appellate court reviews whether the trial court's finding are against the manifest weight of the evidence and will not disturb the trial court's findings if they are supported by some competent, credible evidence. *Id.*, citing *Nippon Life Ins. Co. of Am. v. One Source Mgmt., Ltd.,* 6th Dist. Lucas No. L-10-1247, 2011-Ohio-2175, ¶ 18.

{¶ 18} The evidence overwhelmingly demonstrated that Thomas did not comply with paragraph 9 of the agreed judgment entry, which ordered the immediate return of the bottles. At the hearing on Metron's motion, Dr. Tsirikos-

Karapanos testified unequivocally that Metron had been in possession of 2,616 bottles of CytoDetox, the bottles "were stolen by Mr. Thomas" (tr. 98), and "none" of the bottles were ever returned. (Tr. 96.) Our review of the transcript demonstrates that Thomas's counsel never elicited any sworn testimony to the contrary. Although Thomas's counsel told the judge that Thomas had told him that the bottles were production samples that went out to distributors and that "Dr. [Tsirikos-]Karapanos's company had the money for that," (tr. 35), it is well-established that "statements of counsel are not evidence." *Hersch v. Cuyahoga Cty. Bd. of Revision*, 8th Dist. Cuyahoga No. 109035, 2020-Ohio-3596, ¶ 15, citing *Corporate Exchange Bldgs. IV & V, Ltd. Partnership v. Franklin Cty. Bd. of Revision*, 82 Ohio St.3d 297, 299, 695 N.E.2d 743 (1998). The only evidence about the return of the bottles was Dr. Tsirikos-Karapanos's undisputed testimony that "none" of the 2,616 bottles were ever returned to Metron. Thus, there is no merit to Thomas's contention that the trial court's finding that he had not returned any of the bottles of CytoDetox is against the manifest weight of the evidence.

{¶ 19} Likewise, there is no merit to Thomas's argument that the evidence regarding the value of the unreturned bottles was disputed. The only testimony about the value of the bottles came from Dr. Tsirikos-Karapanos, who testified that the retail price of the bottles was $85 per bottle and further, that Metron had never received any "financial benefit" from the unreturned bottles. (Tr. 95-97.) Thomas offered no sworn testimony whatsoever about the value of the bottles. Accordingly, the trial court's finding that the total retail value of the unreturned bottles was

$222,360 (2,616 bottles x $85 per bottle) was not against the manifest weight of the evidence.

{¶ 20} Thomas contends that the trial court's judgment ordering him to pay $222,360 as damages was unreasonable, however, because a retailer is only entitled to the replacement value of lost goods. He relies on *Akro-Plastics v. Drake Industries*, 115 Ohio App.3d 221, 685 N.E.2d 246 (11th Dist.1996), as support for this argument. But *Akro-Plastics* involved a tort claim regarding goods produced by a manufacturer that were damaged by one of its suppliers; it did not involve either a contempt motion or a settlement agreement. The case is not on point.

{¶ 21} In its judgment entry determining that the retail value of the unreturned bottles was the appropriate amount for Thomas to pay Metron for his failure to return the bottles, the trial court found Thomas's conduct akin to a theft or conversion. As the trial court properly found, the method for valuing stolen property such as that at issue here is the fair market value of the stolen property. *State v. Sherfey*, 5th Dist. Fairfield No. 13-CA-37, 2014-Ohio-1717, ¶ 56. Likewise, the measure of damages for converted property is the market value of the property at the time of the conversion. *Cent. Ohio Med. Textiles v. PSC Metals, Inc.*, 10th Dist. Franklin No. 19AP-167, 2020-Ohio-591, ¶ 33. Fair market value is "that price which would be agreed upon between a willing seller and a willing buyer in a voluntary sale on the open market." *Williams-Diggins v. Permanent Gen. Assur. Corp.*, 8th Dist. Cuyahoga No. 108846, 2020-Ohio-3973, ¶ 13, citing *Wray v. Stvartak*, 121 Ohio App.3d 462, 471, 700 N.E.2d 347 (8th Dist.1997).

{¶ 22} The undisputed evidence at the hearing established that the fair market value of the unreturned CytoDetox bottles was $85 per bottle, the retail price of the bottle. Accordingly, the trial court's determination that Thomas should pay $222,360 as damages for his failure to return the bottles was supported by competent, credible evidence and not against the manifest weight of the evidence.

{¶ 23} The dissent would sustain this assignment of error because it contends the majority "sidesteps a discussion of contempt," and incorrectly analyzes Metron's motion as a motion to enforce a settlement agreement (as the trial court did) rather than as a motion for contempt. But *Pollock v. Trustar Funding, L.L.C.*, 8th Dist. Cuyahoga Nos. 107355 and 107679, 2019-Ohio-3272, cited by the dissent to support its conclusion, actually supports the majority's analysis.

{¶ 24} In *Pollock*, the parties entered into a settlement agreement in 2014, and a consent judgment entry was journalized by the trial court. When the defendants defaulted on the payments required by the consent judgment entry, the plaintiffs filed a "flurry of motions" in the case. *Id.* at ¶ 9. The defendants then proposed a new settlement agreement, which the plaintiffs rejected. *Id.* at ¶ 11. The plaintiffs then filed a motion to enforce the 2014 settlement, as well as a motion to show cause to find the defendants in contempt for violating the settlement agreement, while defendants filed their own motion to enforce the agreement. *Id.* at ¶ 13. After a hearing, the trial court issued a judgment entry enforcing the 2014 settlement agreement. *Id.* at ¶ 16. After the trial court denied the plaintiffs' motions to amend its judgment, they appealed. *Id.* at ¶ 22-24.

**{¶ 25}** Before addressing the merits of the plaintiffs' assignments of error, this court considered whether the trial court had jurisdiction to consider the post-judgment motions filed by the parties. This court noted that when a party dismisses a case pursuant to a settlement agreement, the trial court has jurisdiction to enforce the agreement after the case is dismissed if either the dismissal entry incorporates the terms of the agreement or the trial court specifically retains jurisdiction. *Id.* at ¶ 27, citing *Infinite Sec. Solutions, L.L.C. v. Karam Properties II,* 143 Ohio St.3d 346, 2015-Ohio-1101, 37 N.E.3d 1211, syllabus. This court found that the *Pollock* case was procedurally different from either instance, however, because the trial court entered an agreed judgment that referenced the parties' settlement agreement. *Id.* at ¶ 28.

**{¶ 26}** This court found that '"an agreed judgment is the court's acknowledgement that the parties have entered into a binding contract."' *Id.* at ¶ 29, quoting *Hayes v. White*, 7th Dist. Columbiana No. 01 CO 11, 2001-Ohio-3467, ¶ 29, and therefore, '"courts are authorized to enforce the terms of their judgment through post-judgment proceedings."' *Id.* at ¶ 30, quoting *Grace v. Howell*, 2d Dist. Montgomery No. 20283, 2004-Ohio-4120, ¶ 11. This court explained:

> [c]ourts possess the general power to enter judgment by consent of the parties for the purpose of executing a compromise and settlement of the claims for relief in an action. In that judgment, which is stipulated by the agreement, litigants voluntarily terminate a lawsuit by assenting to specified terms, which the court agrees to enforce as its judgment by signing and journalizing an entry reflecting the terms of the settlement agreement.

*Pollock* at ¶ 30, quoting *Grace* at ¶ 9.

{¶ 27} Thus, the *Pollock* Court concluded that where the trial court has entered an agreed judgment that reflects the terms of the parties' settlement agreement, the court has "inherent authority to enforce its final judgment." *Id.* at ¶ 32. Moreover, the *Pollock* Court concluded, "[B]ecause agreed judgments are typically treated as contracts, we review this matter under the same standard of review applied to a trial court's ruling on a motion to enforce a settlement agreement." *Id.* at ¶ 33. Where "the question presented is an evidentiary one" — such as here, where Thomas contends the trial court's award was against the manifest weight of the evidence — this court "will not overturn the trial court's finding if there is sufficient evidence to support such a finding." *Id.*

{¶ 28} In this case, the parties reached a settlement agreement and asked the trial court to enter an agreed judgment. As noted by the dissent, the agreed judgment entry incorporated the terms of the parties' agreement. Thus, consistent with both *Infinite Sec. Solutions* and *Pollock,* the trial court had post-judgment authority to enforce the terms of the settlement agreement, which it did when it concluded that Thomas had breached the agreement by failing to return any of the CytoDetox bottles and awarded Metron $222,360 in damages. That award was not unreasonable nor against the manifest weight of the evidence.

{¶ 29} The first assignment of error is therefore overruled.

**B. Attorney Fees**

{¶ 30} After the evidentiary hearing on Metron's motion to show cause, the trial court ordered the parties to file post-hearing briefs. Both parties did so. In its

post-hearing brief, Metron requested its attorney fees incurred in prosecuting its motion. As support for its request, Metron attached its counsel's affidavit, which addressed the necessity of the fees, the reasonableness of the requested fees as comparable to those charged in the community for similar services, the amount billed, and the billable rate. Thomas filed a motion to strike counsel's affidavit. The trial court denied Thomas's motion, found that the requested fees were reasonable, and awarded $33,179 in fees to Metron.

{¶ 31} In his second assignment of error, Thomas asserts that the trial court abused its discretion in "summarily" awarding attorney fees because any evidence regarding Metron's fees should have been submitted at the evidentiary hearing on Metron's motion to show cause. Thomas contends that the trial court's consideration of counsel's affidavit violated his due process rights because he was not given an opportunity to cross-examine counsel about the claims made in the affidavit, object to the fees, or present a defense to the fees. He argues further that Metron's fee request was untimely because Metron was required to present at the evidentiary hearing all the evidence it felt was necessary regarding its requested remedy for Thomas's violation of the settlement agreement. He contends that Metron could not "just unilaterally submit an affidavit after the evidentiary record [was] closed when [it] had a full and fair opportunity during a previously scheduled hearing to present evidence on the issue in question," and that Metron's post-hearing request for fees "denied [him] the opportunity to defend his interests" on

the issue of attorney fees. These are the same arguments that Thomas raised in his motion to strike the affidavit of Metron's counsel.

{¶ 32} It is important to note that Thomas never challenged the reasonableness of Metron's requested fees in the trial court; he merely challenged Metron's right to make a post-hearing written request for fees. Likewise, he does not challenge the reasonableness of the awarded fees on appeal; rather, he raises the same arguments he made in the trial court as set forth above. Because Thomas never challenged the reasonableness of the requested fees, we need not consider whether the trial court's award properly determined that the requested fees were reasonable and necessary. *See Cruz v. English Nanny & Governess School*, 8th Dist. Cuyahoga No. 108767, 2020-Ohio-4216, ¶ 49 (case remanded for trial court to reconsider its award of attorney fees where the reasonableness of the awarded fees was challenged in the trial court and on appeal, and the trial court's judgment entry awarding fees did not adequately explain how the billed hours were necessary and reasonable). We need only consider Thomas's argument that Metron's submission of a post-hearing request for fees, supported by counsel's affidavit, improperly denied him an opportunity to contest the fees. We find it did not.

{¶ 33} First, although perhaps not standard practice, Thomas does not cite and we do not find any case law or rule that expressly prohibits a party from making a request for attorney fees in a post-hearing brief. Furthermore, the trial court was not required to hold a hearing on Metron's fee request. Unless the attorney fees are sought as a sanction for frivolous conduct pursuant to R.C. 2323.51 (regarding

frivolous conduct in civil actions), an evidentiary hearing is not required. *Pawul v. Pawul*, 113 Ohio App.3d 548, 681 N.E.2d 504 (8th Dist.1996), citing *Okocha v. Fehrenbacher*, 101 Ohio App.3d 309, 655 N.E.2d 744 (8th Dist.1995). Metron did not seek attorney fees as a sanction for frivolous conduct under R.C. 2323.51; it sought the fees as compensatory damages for the attorney fees it incurred in prosecuting its motion. *See Berry v. Lupica*, 8th Dist. Cuyahoga No. 95393, 2011-Ohio-5381, ¶ 19 ("Attorney fees are also allowed as compensatory damages when the fees are incurred as a direct result of the breach of a settlement agreement."). Thus, an evidentiary hearing was not required.

{¶ 34} Even more importantly, despite his argument that Metron's post-hearing fee request denied him an opportunity to "defend his interests" on the issue of the fees, it is apparent that Thomas could have challenged Metron's requested fees in his written response to Metron's fee request, or he could have requested a hearing where he would have been able to contest the fees. He did not do so. Instead, he filed a motion to strike counsel's affidavit in which he raised the same arguments he asserts now on appeal. However, had Thomas challenged either Metron's entitlement to fees or the reasonableness of the fees as set forth in counsel's affidavit, the trial court could have scheduled an evidentiary hearing regarding the requested fees. *See, e.g.*, *Meyers v. Hot Bagels*, 131 Ohio App.3d 82, 102, 721 N.E.2d 1068 (1st Dist.1999) ("The time to contest the reasonableness of fees was when the affidavit was submitted. Then, the trial court could have scheduled an evidentiary hearing on the reasonableness of the requested fees."). Because Thomas offered no

evidence whatsoever to contest the fees and did not request a hearing, there was no reason for the trial court to conduct an evidentiary hearing. *See Oakwood Mgt. Co. v. Young*, 10th Dist. Franklin No. 92AP-207, 1992 Ohio App. LEXIS 5598, 13-14 (Oct. 27, 1992) (holding that an evidentiary hearing is not required to determine an award of attorney fees unless there is conflicting evidence).

{¶ 35} Nevertheless, Thomas contends that a hearing was necessary because a post-hearing affidavit is "wholly insufficient" to establish the reasonableness of the requested fees, just as an itemized bill is insufficient to establish the reasonableness of attorney fees. This argument likewise fails.

{¶ 36} The party seeking an award of attorney fees bears the burden of establishing the reasonableness of the requested fees. *Bales v. Forest River, Inc.*, 8th Dist. Cuyahoga No. 107896, 2019-Ohio-4160, ¶ 19. "Evidence of reasonableness 'may take the form of testimony, *affidavits*, answers or other forms of sworn evidence. As long as sufficient evidence is presented to allow the trial court to arrive at a reasonable attorney fee award, the amount of the award will not be disturbed absent an abuse of discretion.'" *Id.* at ¶ 7, fn. 2, quoting *R.C.H. Co. v. 3-J Mahoning Serv.*, 8th Dist. Cuyahoga No. 82671, 2004-Ohio-57, ¶ 25. (Emphasis added.) Thus, in the absence of conflicting evidence, an attorney's affidavit alone may be sufficient to support an award of attorney fees. *Manninen v. Alvarez*, 12th Dist. Butler No. CA2013-06-106, 2014-Ohio-75, ¶ 24. Accordingly, although Thomas correctly asserts that an itemized bill alone is insufficient to establish the reasonableness of the requested attorney fees, *Bolek v. Miller-McNeal*, 8th Dist. Cuyahoga No.

103320, 2016-Ohio-1383, his argument that a hearing was required because the affidavit of Metron's counsel could not sufficiently establish the reasonableness of the requested fees is without merit. Accordingly, the trial court did not violate Thomas's due process rights by deciding the issue solely on Metron's sworn evidence.

{¶ 37} To summarize, we find that Metron properly submitted its request for attorney fees with counsel's supporting affidavit in its post-hearing brief, and the trial court did not violate Thomas's due process rights by considering Metron's post-hearing request for fees without conducting a hearing. The second assignment of error is therefore overruled.

{¶ 38} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

EILEEN T. GALLAGHER, J., CONCURS;
MARY J. BOYLE, P.J., DISSENTS WITH SEPARATE OPINION

MARY J. BOYLE, P.J., DISSENTING:

{¶ 39} Because I would vacate the trial court's order of January 11, 2021, I respectfully dissent. I would sustain both assignments of error.

{¶ 40} First, we must analyze Thomas's first assignment of error under contempt law, not, as the majority does, under the framework of breach of a settlement agreement. I agree with the majority that the trial court had jurisdiction to enforce the agreed judgment and that, had Metron filed a motion to enforce the settlement agreement, the trial court would have had jurisdiction over such a motion. However, Metron did not file a motion to enforce the settlement agreement.

{¶ 41} Metron filed a motion to show cause why Thomas should not be held in contempt "for violating the Judgment Entry of June 16, 2017[.]" The parties briefed the contempt issue. Metron requested that the trial court reinstate Thomas's 127-day jail sentence that the trial court had previously suspended as a sanction for contempt. During the October 13, 2020 hearing, the trial court emphasized that "this is really a show-cause hearing." Although the trial court noted in its January 11, 2021 order that Metron's motion was "essentially a motion to enforce a settlement agreement," the order specifically described Metron's motion as one "to show cause why Clayton Thomas should not be held in additional civil and criminal contempt of court." The trial court's January 11, 2021 order also refers to the "October 13, 2020 contempt hearing." The parties do not dispute that the trial court unequivocally held Thomas in civil contempt of court, and they cite to contempt law in their appellate briefs.

**{¶ 42}** However, the majority sidesteps a discussion of contempt, instead focusing on the elements for the breach of a settlement agreement. Although it may be more convenient to analyze Metron's motion as one to enforce a settlement agreement, this was not the motion before the trial court or before us for review. Under the law regarding civil contempt, I would reverse the trial court and vacate the January 11, 2021 judgment entry because it does not give Thomas the opportunity to purge his contempt.

**{¶ 43}** "Contempt is defined as a disregard of, or disobedience to, an order or command of judicial authority." *Allan v. Allan*, 8th Dist. Cuyahoga No. 101700, 2015-Ohio-2037, ¶ 11. As we explained in *Cleveland v. Bright*, 2020-Ohio-5180, 162 N.E.3d 153 (8th Dist.), a court's contempt authority is inherent:

> Courts have had the inherent authority "since the very beginning of common law * * * to compel obedience of their lawfully issued orders." *Cramer v. Petrie*, 70 Ohio St.3d 131, 133, 637 N.E.2d 882 (1994). "The power to punish for contempt is as old as the law itself and has been exercised so often that it would take a volume to refer to the cases. From the earliest dawn of civilization the power has been conceded to exist." Sir John Fox, *The History of Contempt of Court* (London Professional Books Ltd.), 221-222 (1972). "Indeed, the phrase 'contemptus curiae' has been a part of English law since the Twelfth Century." *Cramer* at 133, citing Borrie & Lowe, *Law of Contempt* (2d Ed.1983). "Fundamentally, the law of contempt is intended to uphold and ensure the effective administration of justice. Of equal importance is the need to secure the dignity of the court and to affirm the supremacy of law." *Id.*

> More than a century ago, the Ohio Supreme Court explained, "Such [contempt] powers, from both their nature and their ancient exercise, must be regarded as inherent. They do not depend upon express constitutional grant, nor in any sense upon the legislative will. * * * Without such power no other [power] could be exercised." *Hale v. State*, 55 Ohio St. 210, 213, 45 N.E. 199 (1896). In *State v. Local Union*

> *5760, United Steelworkers of Am.*, 172 Ohio St. 75, 80, 173 N.E.2d 331
> (1961), overruled on other grounds, *Brown v. Executive 200, Inc.*, 64
> Ohio St.2d 250, 416 N.E.2d 610 (1980), the Ohio Supreme Court
> reiterated, "That a court inherently, and quite apart from any statutory
> authority or express constitutional grant, possesses such contempt
> power has been the rule from time immemorial."

*Bright* at ¶ 16-17. "[C]ourts have an absolute duty to safeguard the administration

of justice by use of the contempt power where appropriate." *Id.* at ¶ 18, citing *Hicks*

*v. Feiock*, 485 U.S. 624, 637, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988), fn. 8.

{¶ 44} "Contempt proceedings 'are sui generis in the law.'" *Bright* at ¶ 20,

quoting *Cincinnati v. Cincinnati Dist. Council 51*, 35 Ohio St.2d 197, 201, 299 N.E.2d

686 (1973). They "'bear some resemblance to suits in equity, to criminal proceedings

and to ordinary civil actions; but they are none of these.'" *Cincinnati* at 202. In

addition to financial sanctions for contempt, a court may also impose jail time. *See*

R.C. 2705.05.

{¶ 45} To determine whether the proper procedure was used in contempt

proceedings, "reviewing courts must examine the proceedings and sanction to

determine if the contempt was direct or indirect contempt, and whether it was civil

or criminal." *Cleveland v. Bright*, 2020-Ohio-5180, 162 N.E.3d 153, ¶ 20 (8th Dist.),

citing *State v. Kilbane*, 61 Ohio St.2d 201, 203, 400 N.E.2d 386 (1980). Contempt

is direct if it occurs "'in the presence of or so near the court or judge as to obstruct

the administration of justice,'" and "indirect contempt occurs outside the court's

presence[.]" *Burt v. Dodge*, 65 Ohio St.3d 34, 35, 599 N.E.2d 693 (1992), fn. 1,

quoting R.C. 2705.01. The distinction between civil and criminal contempt "is

usually based on the purpose to be served by the sanction." *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554, 740 N.E.2d 265 (2001). "Civil contempt sanctions are designed for remedial or coercive purposes and are often employed to compel obedience to a court order." *Id.* "Criminal contempt sanctions, however, are punitive in nature and are designed to vindicate the authority of the court." *Id.*, citing *Denovchek v. Trumbull Cty. Bd. of Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988).

{¶ 46} Critically, "'[a] sanction for civil contempt must allow the contemnor the opportunity to purge him or herself of contempt.'" *Ohio Bur. of Workers' Comp. v. Salkin*, 8th Dist. Cuyahoga No. 96173, 2011-Ohio-4260, ¶ 39, quoting *O'Brien v. O'Brien,* 5th Dist. Delaware No. 2003-CA-F12069, 2004-Ohio-5881, ¶ 68. This is because a sanction for civil contempt "is intended to coerce compliance with a court's order[.]" *S.H.B. v. M.W.L.*, 8th Dist. Cuyahoga No. 107258, 2019-Ohio-3036, ¶ 16. In the context of civil contempt, the """contemnor is said to carry the keys of his prison in his own pocket * * * since he will be freed if he agrees to do as ordered."'" *Id.* at ¶ 17, quoting *Pugh v. Pugh*, 15 Ohio St.3d 136, 139, 472 N.E.2d 1085 (1984), quoting *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253-254, 416 N.E.2d 610 (1980). It is reversable error for a trial court to impose a sanction for civil contempt without providing the contemnor an opportunity to purge himself or herself of the contempt. *See, e.g., Salkin* at ¶ 41; *Coventry Group, Inc. v. J.L. Gottlieb Agency, Inc.*, 8th Dist. Cuyahoga No. 94185, 2010-Ohio-4135, ¶ 42.

{¶ 47} Here, in 2016 and 2017, the trial court found Thomas to be in indirect civil contempt of court three times and properly gave Thomas opportunities to purge his contempt. In August 2016, the trial court ordered Thomas to pay $100 per day, starting two days after the order, until he complied with the trial court's previous judgment, which included an order for Thomas to return to Metron the 2,616 CytoDetox bottles. In October 2016, the trial court found that Thomas did not purge his contempt and continued to violate the trial court's orders. The trial court fined Thomas $250 and sentenced him to 30 days in jail. In November 2016, the trial court found that Thomas still had not purged his contempt and fined Thomas $1,000 and sentenced him to an additional 90 days in jail. In April 2017, when Thomas finally appeared at a hearing, the trial court found that Thomas "made no efforts to purge himself of contempt." The trial court "remanded" him to the Cuyahoga County Jail for three days and suspended the remaining 127 days of jail time and $1,000 fine on the condition that Thomas purges his contempt by paying the original fine of $250 and complying with the court's initial order.

{¶ 48} The parties then settled the case in June 2017, and the trial court entered an agreed judgment. The agreed judgment included that Thomas pay Metron $25,000 in monetary damages and return the 2,616 CytoDetox bottles. This settlement rendered the previous contempt proceedings (and Thomas's opportunity to purge that contempt) moot. "It is well established that where the parties settle the underlying case that gave rise to the civil contempt sanction, the contempt

proceeding is moot, since the case has come to an end." *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 740 N.E.2d 265 (2001).

{¶ 49} Three years later, after Metron filed its motion to show cause why Thomas should not be held in contempt of the agreed judgment and after the trial court held a contempt hearing, the trial court found that Thomas was in indirect, civil contempt for failing to return the 2,616 CytoDetox bottles. But the trial court imposed a sanction (payment of $222,360) without including any language giving Thomas an opportunity to purge this contempt by returning the bottles. Although the trial court correctly explained in its January 11, 2021 order that this was not the court's first time ordering Thomas to return the CytoDetox bottles, the order was the first since the parties settled the case in June 2017. Therefore, the 2016 and 2017 contempt proceedings do not satisfy the trial court's obligation to provide Thomas an opportunity to purge the January 11, 2021 finding of contempt.

{¶ 50} Accordingly, I would sustain Thomas's first assignment of error on this basis alone without reaching the merits of Thomas's argument regarding how to calculate the fair market value of the CytoDetox bottles. Although I agree with the trial court's finding holding Thomas in indirect, civil contempt of court for failing to return the CytoDetox bottles, I would vacate the trial court's January 11, 2021 order because it did not give Thomas an opportunity to purge the contempt.

{¶ 51} I further take issue with the majority's opinion relating to the trial court's denial of Thomas's motion to strike and award of attorney fees. I find that the trial court's denial of Thomas's motion to strike was unreasonable, arbitrary, and

capricious. I therefore disagree with the majority that the trial court did not abuse its discretion in denying Thomas's motion to strike.

{¶ 52} "'A trial court may, within its discretion, include attorney fees as part of the costs taxable to a defendant found guilty of civil contempt.'" *Cleveland Civ. Serv. Emp. Assn. v. Cleveland*, 8th Dist. Cuyahoga No. 93922, 2010-Ohio-4352, ¶ 92, quoting *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho*, 52 Ohio St.3d 56, 67, 556 N.E.2d 157 (1990). "An attorney seeking fees has the burden of introducing sufficient evidence of his or her services and the reasonable value thereof." *Cleveland Civ. Serv. Emp. Assn.* at ¶ 93, citing *In re Verbeck's Estate*, 173 Ohio St. 557, 559, 184 N.E.2d 384 (1962). Courts determine "whether attorney fees are reasonable based upon the actual value of the necessary services performed by the attorney, and evidence must exist in support of the court's determination." *In re Guardianship of Norman Beaty*, 8th Dist. Cuyahoga No. 107682, 2019-Ohio-2116, ¶ 16. "A court should then calculate the number of hours reasonably expended and multiply that sum by a reasonable hourly fee." *Id.*

{¶ 53} Rule 1.5 of the Code of Professional Responsibility, which governs attorney fees in all matters, provides eight factors that are considered when determining the reasonableness of a fee:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

{¶ 54} I disagree with the majority and would vacate the attorney-fee award for three reasons. First, at the October 13, 2020 contempt hearing, Metron did not present evidence that the fees it requested in its post-hearing brief were reasonable and necessary. Metron's counsel's affidavit submitted with Metron's post-hearing brief, which set forth the 105 hours billed, alone does not constitute evidence that allows us to evaluate the eight factors set forth in Rule 1.5, such as the fees customarily charged in this locality for similar legal services, the nature and length of the professional relationship with the client, the attorney's experience, or the fee arrangement. Such evidence should have been submitted at the October 13, 2020 hearing.

{¶ 55} Second, Metron did not request or even mention attorney fees at the October 13, 2020 contempt hearing, and the parties did not agree that they would present evidence regarding attorney fees in post-hearing briefing. Regarding post-hearing briefing, the trial court stated that, "so, what we're talking about now is the parties want to agree on exhibits. You can submit briefs. You can argue for your remedy or no remedy. I mean, that's all I really see here." Counsel agreed that they

would work with each other regarding exhibits and would submit "proposal[s] and closing statements with exhibits in writing." The trial court confirmed, "[S]o, you're going to submit briefs, submit proposal[s], if you want to submit for both sides, facts and conclusions of law, whatever you want to do. But this is really a show-cause hearing. It's not an actual trial on the merits." The trial court stated that the parties could do what they "wish" but instructed counsel to "talk to each other. If one is going to submit [something,] then both of you should. If you're going to say here is my brief, here's what I think the proper outcome is, or, here's my brief, here's why I think we should win, and get this remedied, I'll allow you to do that." The trial court's October 13, 2020 journal entry states that it held a hearing on Metron's "motion to show cause. * * * The parties are to stipulate to any exhibits and file any briefs supporting their respective positions by 11/10/2020. Court to rule on the motion. Notice issued." There is no evidence in the record that the parties agreed that Metron could present new evidence in post-trial briefing to support an award of attorney fees.

{¶ 56} Lastly, I find that Thomas properly objected to Metron's post-trial submission of attorney fees when he filed his motion to strike. The heading of Thomas's November 17, 2020 motion to strike specifically states, "Defendant Clayton Thomas'[s] Objection to, and Motion to Strike, the 11-10-20 Affidavit of Ryan K. Rubin." This pleading further goes on to state that "Defendant Clayton Thomas hereby enters his objection to, and moves to strike, the 11-10-20 affidavit of Ryan K. Rubin submitted as part of Metron's post-hearing brief regarding the

October 13, 2020 hearing on Metron's motion for sanctions." Thomas's objection to the reasonableness of the fees is implied in his November 17, 2020 filing.

{¶ 57} Accordingly, I find that the trial court abused its discretion in denying Thomas's motion to strike and awarding Metron attorney fees without a hearing regarding the fees. Although I would affirm the trial court's finding that Thomas was in indirect, civil contempt of court for failing to return the CytoDetox bottles, I would sustain both of Thomas's assignments of error and vacate the trial court's January 11, 2021 order and attorney-fee award.