[Cite as *Alami v. Khalid*, 2024-Ohio-2456.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ALI ALAMI,                                          :

     Plaintiff-Appellant,                    :

                                    No. 113140

     v.                                           :

HASSAN KHALID, ET AL.,                    :

     Defendants-Appellees.                  :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 27, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-915227

---

### *Appearances:*

Guy E. Tweed, II, *for appellant*.

Michael A. Partlow, *for appellees*.

EILEEN T. GALLAGHER, J.:

{¶ 1} Plaintiff-appellant, Ali Alami ("Alami"), appeals the denial of his motion to enforce settlement agreement. He claims the following errors:

> 1. The trial court erred when it denied appellant's oral motion for default judgment based upon appellees' failure to file a response in contravention of Civ.R. 6(C)(1).

2.  The trial court erred in finding that the equipment to be returned to appellant did not include all items identified in Exhibit A of the settlement agreement and in finding that all equipment was returned to appellant.

3.  The trial court erred in finding that appellant failed to meet his burden of proving damages.

{¶ 2} We affirm the trial court's judgment.

## I.  Facts and Procedural History

{¶ 3} In May 2019, Alami filed a complaint for replevin, money damages, and unjust enrichment against defendants-appellees, Hassan Khalid ("Khalid") and Sahara Cuisine, Inc. ("Sahara") (collectively "the defendants").  The complaint alleged that Alami and Khalid entered into a joint venture to buy fruit and vegetable processing equipment at auction.  The auction took place at Miami University ("Miami").  The complaint further alleged that although Alami purchased the equipment and had it delivered to Khalid's place of business, Khalid refused to follow through with the joint venture and refused to turn the property over to Alami.  In the prayer for relief, Alami sought the return of the equipment, compensatory damages resulting from the alleged loss of use of the equipment, and "other equitable relief."  (Complaint p. 4.)

{¶ 4} The parties entered into a settlement agreement in October 2021.  In a journal entry dated October 25, 2021, the court removed the case from the active docket but retained jurisdiction until it received a final dismissal from the parties.  A final dismissal was never filed.

**{¶ 5}** In February 2023, Alami filed a motion to enforce the settlement agreement. In support of the motion, Alami submitted a separately-filed affidavit, together with a copy of the settlement agreement, and a list of equipment that he claimed was not returned as required by the settlement agreement. He also stated in the affidavit that the missing equipment was worth $87,175.00, and that some of the equipment the defendants returned was damaged in the amount of $76,500.00. He, therefore, sought to recover $163,675.00 in damages as a result of the defendants' alleged breach of the settlement agreement.

**{¶ 6}** The settlement agreement provides, in relevant part:

> Know all men by these presents that in consideration of EIGHT THOUSAND DOLLARS ($8,000.00) paid by PLAINTIFF TO DEFENDANTS (the check shall be made payable to "HASSAN KHALID") by midnight December 3, 2021, DEFENDANTS agree to return to PLAINTIFF all the property purchased by DEFENDANTS from Miami University, which is the subject of the litigation between the parties, to PLAINTIFF, with exception of a "CHILLER" that was already sold by DEFENDANTS. This includes any and all equipment and supplies. A copy of the list is attached hereto as Exhibit A. Plaintiff shall be allowed to pick up the equipment from DEFENDANTS on or before midnight on December 15, 2021. DEFENDANTS shall cooperate in arranging a time and access to the equipment.

**{¶ 7}** The list attached to the settlement agreement as Exhibit A includes a list of 18 items. The 18 items are listed and described on the first three pages of Exhibit A. The fourth page of Exhibit A includes a separate list of 19 items. Referring to these 19 items, the top of the fourth page states:

> Additional item list. WHICH [sic] WEREN'T & AREN'T INCLUDED IN SAID AUCTION PURCHASE
>
> I ALI H. ALAMI PICKED UP THESE ITEMS FROM THE UNIVERSITY AT NO CHARGE TO ME.

{¶ 8} The defendants did not file a brief in opposition to the motion for settlement agreement. Nevertheless, the court held an evidentiary hearing on the motion in June 2023. During the direct examination of Alami, his counsel made an oral motion for default judgment, arguing that, pursuant to Civ.R. 6(C)(1), the defendants waived any defense to the motion by failing to file a brief in opposition. (Tr. 14.) The defendants, who were present at the hearing, had previously appeared and defended against the action. Therefore, the trial court overruled the motion for default and continued with the evidentiary hearing. (Tr. 14-15.)

{¶ 9} Alami testified at the hearing that he paid for the equipment purchased at the auction, but he did not present any documentation to corroborate his testimony. He also admitted that the equipment was sold "as is," meaning that there were no warranties on any of the equipment. (Tr. 33.) Alami claimed the equipment was in working condition when it was purchased and delivered to the defendants' warehouse and that the defendants failed to return all the equipment listed in the settlement agreement. Alami further insisted that the property that the defendants did return had been damaged. Counsel asked Alami to quantify the diminution in value of the equipment, and Alami replied: "I think it's like 70,000, 60,000. I'm not sure." (Tr. 21.)

{¶ 10} Benjamin Saul Regal ("Regal"), owner of Regal Equipment Inc., testified that Alami hired him to appraise the value of the equipment and to pick up the equipment from Khalid's warehouse. (Tr. 37.) According to Regal, his project manager, Michael Schatz ("Schatz"), was present when Tesar Industries, a third-

party rigging company, picked up the equipment and delivered it to Regal's warehouse. (Tr. 37-38.) Regal testified that the missing equipment was worth $85,975.00. (Tr. 41.) However, on cross-examination, he admitted that he appraised the equipment without ever seeing it, and he did not explain the basis for his valuations. (Tr. 42.)

{¶ 11} Schatz testified that he is a member of an organization known as "Equipment Appraisers of America," but that he is not a licensed appraiser. (Tr. 51.) According to Schatz, the equipment was "in pretty rough condition" when it was recovered from the defendants' warehouse. (Tr. 49.) Schatz admitted that Regal appraised the missing items without seeing them and that the condition of the items is an important factor to consider in the valuation. (Tr. 53-54.)

{¶ 12} Khalid testified that Alami paid him the $8,000 due under the terms of the settlement agreement. He stated that Alami bid on the equipment at auction, but he (Khalid) paid the auctioneer price of $11,141.11 for the purchase of 18 pieces of equipment. (Tr. 68.) Khalid verified documentation showing his account number on the auction platform, GovDeals, Inc., and a wire transfer of $12,555 for the purchase that included the auctioneer's price and fees. (Tr. 68.) Khalid hired a rigging company known as "TQL" to transport the 18 items he purchased to his warehouse, and he verified the invoice from TQL for the delivery. (Tr. 70.) Khalid inspected the 18 items before they were transported away from the auction. He stated that because the equipment was not "hooked," he could not determine whether any of it worked. (Tr. 71.) He also stated that the equipment was sold "as

is," and that it remained in his warehouse for four years before being turned over to Alami. (Tr. 76.)

{¶ 13} Khalid testified that when the equipment was later picked up pursuant to the settlement agreement, it was in the same condition it was in when they received it from Miami. Khalid further stated that he worked closely with Schatz, who was present when the property was picked up, and that no one mentioned any missing equipment at that time. (Tr. 75.) Khalid maintained that he complied with his responsibilities under the settlement agreement and that he did not fail to turn over any of the equipment.

{¶ 14} The trial court found that the defendants complied with the terms of the settlement agreement and returned all the property that they were required to turn over. The court also concluded that the equipment turned over to Alami was delivered in the same condition it was in when they purchased it from Miami and that Alami failed to prove his claim for damage with certainty. Alami now appeals the trial court's judgment.

## II.  Law and Analysis

### A. Default Judgment

{¶ 15} In the first assignment of error, Alami argues the trial court erred in failing to grant his oral motion for default judgment. He contends the trial court failed to properly apply Civ.R. 6(C)(1) and that the defendants' failure to file a brief in opposition to his motion to enforce the settlement agreement constituted a waiver of any defense to the motion.

{¶ 16} Civ.R. 6(C)(1) governs the time in which briefs must be filed in response to motions and provides:

> Responses to a written motion, other than motions for summary judgment, may be served within fourteen days after service of the motion. Responses to motions for summary judgment *may* be served within twenty-eight days after service of the motion. A movant's reply to a response to any written motion may be served within seven days after service of the response to the motion.

(Emphasis added.)

{¶ 17} Where a statute employs the term "may" as opposed to the imperatives "shall" or "must," the term 'may' is construed as permissive, not mandatory. *In re Ormet Primary Aluminum Corp.*, 2011-Ohio-2377, ¶ 17, citing *State ex rel. Niles v. Bernard*, 53 Ohio St.2d 31, 34 (1978) ("usage of the term 'may' is generally construed to render optional, permissive, or discretionary the provision in which it is embodied"). Therefore, the defendants were not required to file a brief in response to the motion to enforce the settlement agreement, and their failure to file a response brief, by itself, was not a waiver of their defenses to the motion.

{¶ 18} Moreover, pursuant to Civ.R. 55(A), if the party against whom default judgment is sought has appeared in the action, that party must be served with written notice of the motion for judgment at least seven days prior to a hearing on the motion. The defendants appeared in this action and filed an answer and counterclaim. Therefore, they were entitled to written notice of a potential default before the court could grant such a motion. And since the record is devoid of any evidence that Alami provided the defendants with written notice of his intent to seek

a default judgment against them, the trial court properly overruled his oral motion for default.

{¶ 19} The first assignment of error is overruled.

## B. Settlement Agreement

{¶ 20} In the second assignment of error, Alami argues the trial court erred in its interpretation of the settlement agreement so as to exclude certain items listed in Exhibit A that were subject to the obligations set forth in the settlement agreement. In the third assignment of error, Alami argues the trial court's finding that he failed to prove his damages is against the manifest weight of the evidence. We discuss these assigned errors together because they are closely related.

{¶ 21} The standard of review applicable to rulings on a motion to enforce a settlement agreement depends on the question presented. *Turoczy Bonding Co. v. Mitchell*, 2018-Ohio-3173, ¶ 15 (8th Dist.); *HSBC Bank USA, N.A. v. Rao*, 2024-Ohio-310, ¶ 11-12 (10th Dist.). A settlement agreement is a contract, and if the issue is a matter of contract law, we determine whether the trial court's judgment "is based on an erroneous standard or a misconstruction of the law." *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson*, 74 Ohio St.3d. 501, 502 (1996).

{¶ 22} When the dispute involves a factual or evidentiary issue, we will not disturb the trial court's judgment if it is supported by competent, credible evidence. *Metron Nutraceuticals, L.L.C. v. Thomas*, 2022-Ohio-79, ¶ 17 (8th Dist.), citing

*Savoy Hospitality, L.L.C. v. 5839 Monroe St. Assocs.*, L.L.C., 2015-Ohio-4879, ¶ 28 (6th Dist.). This case involves issues of both contract law and fact.

{¶ 23} In interpreting contracts, the court's role is "to give effect to the intent of the parties to the agreement." *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 11, citing *Hamilton Ins. Servs. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273 (1999).

{¶ 24} Where the contract terms are clear and unambiguous, we may determine the parties' rights and obligations from the plain language of the contract. *Aultman Hospital Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d. 51, 53 (1989). If the language of a contract is plain and unambiguous, we must enforce the terms as written, and we may not turn to evidence outside the four corners of the contract to alter its meaning. *Westfield Ins. Co.* at ¶ 11.; *Aultman Hospital Assn. at* 53. ("Intentions not expressed in the writing are deemed to have no existence and may not be shown by parol evidence.").

{¶ 25} When considering the language of a particular contractual provision, "[c]ommon words . . . will be given their ordinary meaning unless manifest absurdity results or unless some other meaning is clear from the face or overall contents of the agreement." *Cincinnati Ins. Co. v. Anders*, 2003-Ohio-3048, ¶ 34, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus.

{¶ 26} Alami argues the trial court erred in finding that certain items listed in Exhibit A were expressly excluded from the terms of the agreement. As previously stated, the settlement agreement states, in relevant part:

DEFENDANTS agree to return to PLAINTIFF all the property purchased by DEFENDANTS from Miami University, which is the subject of the litigation between the parties, to PLAINTIFF, with exception of a "CHILLER" that was already sold by DEFENDANTS. This includes any and all equipment and supplies. A copy of the list is attached hereto as Exhibit A.

{¶ 27} The contract terms are plain and unambiguous. The settlement agreement clearly requires the defendants to turn over to Alami the equipment and supplies according to the list outlined in Exhibit A. The fourth page of Exhibit A attached to the settlement agreement plainly states:

Additional item list. WHICH [sic] WERE'NT & ARE'NT INCLUDED IN SAID AUCTION PURCHASE

I ALI H. ALAMI PICKED UP THESE ITEMS FROM THE UNIVERSTIY AT NO CHARGE TO ME

Nineteen items are listed under this language. Despite the typographical errors in the language, it is clear that the 19 items listed on this page are not subject to the obligations set forth in the settlement agreement because they were not included in the "auction purchase," and the defendants were not required to turn these items over to Alami. Relying on this language, the trial court found that all the items Alami claimed were missing were listed on the fourth page of Exhibit A and were, therefore, excluded from the settlement agreement.

{¶ 28} However, at the hearing, Alami identified a document introduced into evidence as "Plaintiff's Motion Exhibit 2" ("exhibit No.2"). He testified none of the items listed in exhibit No. 2 were turned over to him. Most of the items listed in exhibit No. 2 track the descriptions and order of the items listed on the fourth page of Exhibit A. Moreover, none of these items appear on the first three pages of

Exhibit A that are subject to the terms of the settlement agreement. It is, therefore, reasonable to infer that they were excluded from the settlement agreement because they appear solely on the list of excluded items on the fourth page of Exhibit A.

{¶ 29} There are, however, four items listed in exhibit No. 2 that are included in the first three pages of Exhibit A and are not listed on the fourth page. Therefore, these items were not among the items excluded on the fourth page of Exhibit A. Those items include a "water disinfection monitor & control system," a "Wedge Maestro," a "sink/packing combo," and a "packing table." These items were listed as item nos. 2, 16, 15, and 14 on pages one and two of Exhibit A. Therefore, the trial court erred as a matter of law in finding that these items were excluded with the other items listed on page four of Exhibit A.

{¶ 30} Nevertheless, the trial court also found that Alami failed to prove damages with reasonable certainty. Damages for breach of contract must be proven with reasonable certainty. *KN Excavation L.L.C. v. Rockmill Brewery L.L.C.*, 2022-Ohio-3414, ¶ 26 (5th Dist.); *Kavalec v. Ohio Express, Inc.*, 2016-Ohio-5925, ¶ 37 (8th Dist.).

{¶ 31} The trial court found that Alami failed to prove his damages with reasonable certainty because the appraisers who testified regarding the valuation of the equipment had never seen the equipment and admittedly were not aware of what condition the equipment was in when it was originally purchased. Alami contends that the court's findings are against the manifest weight of the evidence.

**{¶ 32}** In conducting a manifest-weight review of the evidence, we examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *ABV Corp. v. Cantor*, 2023-Ohio-3363, ¶ 8 (8th Dist.), citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20.

**{¶ 33}** In determining whether the judgment is against the manifest weight of the evidence, a reviewing court should make "every reasonable presumption in favor of the judgment and the finding of facts." *Eastley* at ¶ 20. If the evidence is prone to more than one construction, we must give it the interpretation that is consistent with the verdict and judgment and most favorable to sustaining the trial court's verdict and judgment. *Calabrese Law Firm v. Christie*, 2024-Ohio-579, ¶ 41 (8th Dist.), citing *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, (1984).

**{¶ 34}** The uncontroverted evidence showed that the parties paid less than $12,000 for all 18 items listed in the first three pages of Exhibit A and that the items were sold in an "as is" condition. Yet, Alami claims the missing equipment, which only accounts for some of the items, was valued at $85,975.00. This value is not credible based on the amount paid for all the equipment and the fact that Alami's appraisers did not know the condition of the equipment because they had never seen any of it either at the time it was purchased or at any time thereafter.

{¶ 35} Alami also failed to prove his claim for damage to the equipment that the defendants did turn over to him. Although Alami's appraisers, Regal and Schatz, testified as to the alleged value of the missing equipment, they did not provide any testimony regarding the value of the items that were returned to Alami even though they were available for inspection. Instead, Alami's lawyer asked Alami to quantify the diminution in value of the equipment, but he was not qualified as an expert or appraiser, and he did not provide any basis for his opinion. He simply guessed, "I think it's like 70,000, 60,000. I'm not sure." (Tr. 21.)

{¶ 36} Again, the parties paid less than $12,000 for all the equipment. Alami's opinion regarding the diminution in value lacks credibility because it was not based on any expertise or experience, nor was it based on any methodology of appraisal. Indeed, the claimed loss in value is substantially more than the price paid to buy all of the equipment.

{¶ 37} The trial court erred as a matter of law in excluding certain items from the terms of the settlement agreement. However, the error was harmless because Alami failed to establish his claim for damages with reasonable certainty. Civ.R. 61 defines harmless error as follows:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

An error is not prejudicial, i.e., does not affect substantial rights, "if its 'avoidance would not have changed the result of the proceedings.'" *Goins v. Oliverio*, 2010-Ohio-3849, ¶ 10 (9th Dist.), quoting *In re K.B.*, 2010-Ohio-1015, ¶ 21 (7th Dist.), citing *Fada v. Information Sys. & Networks Corp.*, 98 Ohio App.3d 785, 792, (2d. Dist. 1994).

{¶ 38} Even if the trial court had properly found that the defendants were required to return the four items listed in exhibit No. 2 that were also listed on the first three pages of Exhibit A, Alami failed to establish the value of the missing items with reasonable certainty. Therefore, the trial court had no basis on which to grant compensatory damages for the loss of the items and its error in excluding the four items from the settlement agreement was harmless.

{¶ 39} The second and third assignments of error are overruled.

{¶ 40} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, P.J., and
EMANUELLA D. GROVES, J., CONCUR