[Cite as *Williams v. Hung*, 2024-Ohio-5093.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| THOMAS WILLIAMS, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 113363 |
| v. | : | |
| MICHELLE HUNG, ET AL., | : | |
| Defendants-Appellees. | : | |
| [Appeal by Brian Bardwell, | : | |
| Defendant-Appellant] | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 24, 2024

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-971623

### *Appearances:*

Novak LLP and William J. Novak, *for appellee* Thomas
Williams.

UB Greensfelder LLP and Alvin E. Mathews Jr., *for* UB
Greenfelder LLP and Amanda Martinsek.

Hanna, Campbell & Powell, LLP, and John D. Latchney,
*for appellant*.

FRANK DANIEL CELEBREZZE, III, J.:

{¶ 1} Appellant Brian Bardwell ("Bardwell") brings the instant appeal challenging the trial court's award of sanctions in the form of attorney fees pursuant to Civ.R. 45 and 11. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶ 2} In November 2022, Thomas Williams ("Williams") filed a complaint naming Michelle Hung ("Hung") "individually and in her official capacity" as a Lorain County Commissioner; Harry Williamson ("Williamson"), the 9-1-1 Director for Lorain County; and Bardwell, an attorney who sued Williams on behalf of Williamson in a separate action filed in Lorain County. Williams's complaint alleged claims for civil abuse of process, civil recovery for criminal acts, civil conspiracy, and negligence. On January 23, 2023, Williams filed his first amended complaint, alleging the same claims but attaching different exhibits and evidence thereto. The first amended complaint alleged the following facts that we briefly summarize for context.

## A. The Factual Allegations Giving Rise to the Complaint

{¶ 3} Williams was employed by Lorain County as County Administrator from January 4, 2021, until he was terminated on August 18, 2021, "without cause."

{¶ 4} Williams alleged, however, that he was not fired without cause and the "true motive" in his termination stemmed from his knowledge of a "sexual affair" between Hung and Williamson while Hung was Williamson's direct superior. The

complaint detailed that in June and July 2021, Hung confided in Williams that she was having an affair with Williamson.

{¶ 5} Williams alerted Dan Petticord, an Assistant County Prosecutor for Lorain County, about the affair because Williams was concerned that Hung had "breached and was continuing to breach her statutory and other legal obligations to the citizens of Lorain County." Williamson was terminated from his position on August 3, 2021, and the affair was publicly reported in the local media.

{¶ 6} After the affair became a matter of public knowledge, Hung was urged to resign. Hung responded that she would not resign, called the exposure of the affair a "political stunt," and warned that anyone involved should "consider the consequences." One day later, on August 18, 2021, Williams was terminated from his position.

{¶ 7} Williams filed a lawsuit in the Northern District of Ohio ("the federal suit"), alleging that his termination violated 42 U.S.C. § 1983 and various Ohio laws. Williamson, represented by Bardwell, also filed a lawsuit in Lorain County stemming from his termination ("the Lorain County lawsuit"), asserting claims for whistleblower retaliation, interference with civil rights, wrongful termination, tampering with evidence, spoliation, falsification, intimidation, and destruction of public records.

{¶ 8} The complaint in the instant matter alleged that the Lorain County lawsuit was a sham that Bardwell had been using to relentlessly "blackmail" the parties into a quick settlement. It also alleged that during the discovery phase of the

federal suit, Bardwell and Hung were deposed by Williams's counsel but Bardwell's attorney did not appear for the deposition, so Bardwell lodged objections on his own behalf and "adamantly and improperly refused to answer questions regarding his source for . . . text messages and confidential executive session information." The complaint further alleged that during her deposition, Hung "falsely misrepresented [information] under oath" and "improperly asserted the attorney-client privilege."

{¶ 9} The federal suit settled for $450,000, "without [Williams] having the benefit of the information [from the Lorain County lawsuit]." Williams alleged that the federal case would have

> resolved for more money had [Williams] had the benefit of the information which Defendants shielded by Defendant Hung's misrepresentations and by the improper assertion of privileges when in fact that information was already available and used by all of the Defendants in this matter for the purpose of filing the sham and extortionary Lorain County complaint.

Williams's first amended complaint, ¶ 27.

### B. Bardwell's Conduct After the Initial Complaint was Filed

{¶ 10} Pertinent to the instant appeal, after the initial complaint was filed but before any party had answered, Williams filed a motion seeking to disqualify Bardwell from representing Williamson because Bardwell was also a named defendant. Supplements to the motion further sought disqualification and brought to light that Bardwell had issued at least 17 subpoenas to nonparties without notifying Williams's counsel or the parties that were implicated by the subpoenas.

{¶ 11} Bardwell issued the subpoenas directly to various cell-phone providers and requested an incredibly wide breadth of information. Copies of the subpoenas that were made part of the record all requested the following items for the specific phone number:

1. Subscriber billing & account information, including account notes;

2. Incoming and outgoing cell tower records;

3. Incoming and outgoing call detail records;

4. Incoming and outgoing text messages;

5. Incoming and outgoing text-message detail records;

6. Cell tower location information;

7. All stored photographic or video images; and

8. All stored voice mail messages

This subpoena seeks the above records for the period from September 1, 2020 through August 21, 2021 . . . .

{¶ 12} In addition to numerous nonparties, Bardwell also issued the subpoena to Williams's cell-phone provider.

## C. The Motions to Quash the Subpoenas

{¶ 13} Williams eventually filed a separate motion titled "emergency motion to quash subpoenas and motion for sanctions against attorney Brian Bardwell with request for oral hearing." The motion asked the court to quash the various subpoenas issued to various nonparty providers. The motion pertinently argued that the subpoenas should be quashed and that sanctions were warranted because

(1) the nonparty individuals and their phone records have nothing to do with the conduct involving the defendants in this case; (2) Bardwell issued the subpoenas without first appearing in the lawsuit; and (3) Bardwell did not provide Williams with copies of the subpoenas.

{¶ 14} In December 2022, Williams filed another motion titled "emergency motion to quash subpoena directed at plaintiff's phone records with request for oral hearing." This time, Williams sought to quash a subpoena issued to AT&T Wireless for Williams's cell phone records and sought sanctions pursuant to Civ.R. 45.

{¶ 15} Numerous nonparties began to appear in the matter, individually asking the trial court to quash the subpoenas issued by Bardwell to their respective client's cell-phone providers.

### 1. The Lorain County Parties

{¶ 16} Nonparties Lorain County Board of Commissioners, Lorain County Children Services, and Lorain County 9-1-1 Emergency Services filed a motion asking the court to quash various subpoenas issued to these entities, including several individual parties associated with these entities. The motions reasoned in part that some of the individuals who were subpoenaed were attorneys and that "some of the data which may be stored on several of the phones likely contains attorney-client privileged material." The motion indicated that copies of the subpoenas were not provided to these entities and that these entities only found out about them after Verizon reached out and informed the individuals that it would

respond to the subpoenas unless a motion to quash was filed and presented to Verizon.

{¶ 17} The Lorain County parties did not ultimately seek sanctions and did not participate in the matter at all once the subpoenas were ultimately quashed.

### 2. Katherine Loos

{¶ 18} Nonparty Katherine Loos ("Loos") filed a motion to quash a subpoena issued to Cellco Partnership d.b.a. Verizon Wireless that sought "voluminous and highly sensitive information pertaining to the cellphone records of Ms. Loos's daughter, who is also a nonparty." The motion indicated that "Ms. Loos and her daughter were not involved with those prior lawsuits, nor is there an allegation in this case that relates to Ms. Loos and her daughter." Loos contacted Bardwell and demanded that he withdraw the subpoena. Bardwell specifically refused, causing Loos to file the motion to quash and request sanctions relating to the subpoena.

### 3. Ulmer and Berne LLP and Amanda Martinsek

{¶ 19} Nonparties Ulmer and Berne LLP[1] and partner Amanda Martinsek (collectively "Ulmer") also filed a motion to quash the subpoenas issued to Ulmer, including Martinsek. Ulmer's motion to quash alleged that like Loos, Ulmer attempted to reason with Bardwell and asked him to withdraw the subpoenas; he explicitly refused.

---

[1] This court takes judicial notice that as of December 5, 2023, Ulmer merged with Greensfelder Hemker & Gale PC and is now known as "UB Greensfelder." Nonetheless, we continue to refer to "Ulmer" throughout this opinion.

{¶ 20} The motion included a copy of the letter that Ulmer sent to Bardwell, urging him to withdraw the subpoena and putting him on notice that failure to do so would cause Ulmer to seek sanctions and described the subpoenas as "the very definition of harassment and sanctionable conduct for which my clients will seek recourse."

### 4. David Moore, Matt Lundy, James Cordes, and Thomas Williams

{¶ 21} Several individual Lorain County commissioners and representatives: David Moore, Matt Lundy, James Cordes, and Thomas Williams (in his official capacity), also filed a motion to quash the subpoenas issued to their respective cell phone service providers.

{¶ 22} Unlike the other Lorain County parties that appeared, these Lorain County parties ultimately sought sanctions related to the improper subpoenas and remain relevant to the instant appeal. Therefore, any references to "Lorain County" throughout this opinion hereinafter refer to David Moore, Matt Lundy, James Cordes, and Thomas Williams in his official capacity.

### D. Subpoenas Quashed

{¶ 23} On December 9, 2022, the trial court ruled that "all subpoenas are quashed" and set the issue of sanctions and attorney fees for a hearing on December 12, 2022. Prior to the hearing, Williams filed another motion seeking sanctions, this time alleging that Bardwell had violated Civ.R. 11, citing Bardwell's continued harassment relating to the subpoenas and the issuance of discovery requests without appearing in the matter.

{¶ 24} Following the hearing on December 12, 2022, the trial court issued a judgment entry indicating that all subpoenas had been quashed; that all motions for sanctions and/or attorney fees were held in abeyance; and that Bardwell was to answer the complaint by January 11, 2023, and to respond to the requests for sanctions and attorney fees by January 20, 2023. It also ordered Bardwell to "consult [an] expert ethics person on propriety of representing deft Williamson given Bardwell is also a deft in the action and whether conflict is waivable one or not." The judgment entry also indicated that Williams's motion to disqualify Bardwell as Williamson's counsel was discussed and would be considered at a later date.

{¶ 25} The day after the hearing, Williams filed a protective order asking the court to stay his time to respond to discovery until the issue of Bardwell's disqualification was resolved, which the court granted shortly thereafter.

### E. Bardwell's Continued Involvement and Disqualification

{¶ 26} In January 2023, separate counsel appeared on Bardwell's behalf, filed an answer to the complaint, and represented Bardwell throughout the pendency of the matter. Bardwell's counsel filed a brief in opposition to Williams's motion for a protective order and sanctions and began filing oppositions to the various nonparties' motions for sanctions; several parties filed reply briefs.

{¶ 27} Relevant to the instant matter, Williamson, acting pro se, filed a motion to dismiss the complaint for service reasons. Williams responded

immediately with a motion to strike the motion to dismiss, claiming that the motion was clearly "ghostwritten" by Bardwell.

{¶ 28} On January 30, 2023, the trial court issued a journal entry disqualifying Bardwell from "serving as legal counsel for his fellow defendant, Mr. Williamson" and cited "ethical canons" as the reasoning. Disputing the trial court's disqualification order, Bardwell filed an interlocutory appeal to this court, *Williams v. Hung*, 2023-Ohio-4540 (8th Dist.) ("*Hung I*").

{¶ 29} Several superseding events prevented this court from timely reviewing *Hung I*; almost a year later, in December 2023, this court reversed the judgment of the trial court disqualifying Bardwell, reasoning that the record was insufficient to determine whether disqualification was proper and remanded the matter for the trial court to hold an evidentiary hearing or issue written findings on the disqualification matter. *Id*. at ¶ 21.

### F. Sanctions Issue Continues while Disqualification is Pending

{¶ 30} While *Hung I* was pending, the court continued to adjudicate the numerous motions for sanctions that had been filed. The court set a hearing for February 15, 2023, to discuss the outstanding motions for sanctions.

{¶ 31} On February 13, 2023, Williams filed another motion for sanctions pursuant to Civ.R. 11, alleging that Bardwell should be sanctioned for his "ghostwritten" motion to dismiss filed on behalf of Williamson, in an attempt to contravene the court's order directing him to seek advice regarding his representation. The motion provided that Bardwell had used his own email to serve

Williams with a copy of the motion to dismiss that was signed by Williamson in his pro se capacity.

{¶ 32} After the February 15, 2023 hearing, the trial court's journal entry advised that the trial court heard arguments relating to all motions for sanctions excluding Williams's recently filed motion from February 13, 2023, relating to Bardwell's alleged "ghostwriting." The journal entry pertinently provided that "[t]he court heard only argument on the grounds for sanctions and not on the amount/form of sanctions sought or to be imposed. Hearing will be continued to provide defendant Bardwell sufficient time to prepare for the remainder of the hearing . . . ." Shortly after the hearing, Lorain County filed its first motion for sanctions related to Bardwell's deluge of subpoenas.

{¶ 33} The same day as the hearing, Williamson filed a notice that he had removed the matter to federal court and the court journalized that it would proceed "no further unless and until the case is remanded."

### G. Reinstatement and Continuation of Sanctions Issues

{¶ 34} The case was remanded back from federal court in April 2023. Shortly thereafter, Williams filed a motion asking the court to hold the second portion of the sanctions hearing. Ulmer followed with a similar filing. Lorain County, Ulmer, Loos, and Williams ultimately refiled their requests for sanctions following reinstatement of the matter.

{¶ 35} In July 2023, following a pretrial, the trial court's journal entry pertinently provided that "[a]ny party or non-party pursuing sanctions against

Attorney Bardwell is to file such motion no later than 8/11/2023[.]" The entry set the hearing on the outstanding sanctions motions for September 6, 2023.

{¶ 36} On August 7, 2023, Williams filed a motion to show cause and requested sanctions from Bardwell, arguing that despite the trial court's order disqualifying Bardwell from representing Williamson, "Bardwell filed a complaint in Federal Court against numerous defendants, and Plaintiff Thomas Williams" and noted that it contained allegations like those in the Lorain County case. Williams speculated that it appeared that Bardwell was attempting to use the federal court to circumvent the trial court's disqualification order. At this time, Williams also submitted a fee schedule detailing the sanctions he was seeking — attorney fees in the amount of $18,980 for work performed relating to Bardwell's alleged misconduct from December 2022 to February 2023.

## H. Court Addresses Sanctions and Contempt

{¶ 37} The court held the second portion of the hearing on September 6, 2023. The following journal entry pertinently provided that "[t]he court heard argument on the amount/form of sanctions sought or to be imposed. Additional evidence heard and exhibits offered and admitted . . . . A judgment entry determining whether grounds for sanctions exist, and the amount/form of sanctions to be imposed (if applicable) is forthcoming . . . ." The court also incorporated the transcript from the February 2023 sanctions hearing as an exhibit and ordered Bardwell's briefs in opposition to the sanctions/fee schedules to be filed by October 6, 2023.

{¶ 38} The transcript of the hearing indicates that there was some confusion at the beginning: Bardwell's counsel requested rulings on the motions for sanctions because such rulings were never issued after the February sanctions hearing. The trial court believed that the hearing was only on the amount of sanctions, but promised Bardwell it would issue rulings as to the motions for sanctions and then issue a later, separate ruling on the amount of sanctions.

{¶ 39} After the hearing, Ulmer filed copies of all exhibits that were submitted and accepted by the court following the sanctions hearing. The exhibits pertinently included the letter sent to Bardwell asking that he withdraw the subpoenas and Bardwell's response refusing to withdraw the subpoenas. Ulmer also filed an affidavit, attesting to the accuracy and reasonableness of the legal services rendered in connection with this matter and seeking $37,270.50 in attorney fees as sanctions for Bardwell's misconduct. Loos filed similar materials in October 2023.

{¶ 40} On September 12, 2023, the trial court issued rulings on the motions for sanctions. It granted Williams's "motion to show cause and request for sanctions, most recently submitted on 8/7/2023"; Lorain County's motion for sanctions; Ulmer's motion for sanctions; and Loo's motion for sanctions. The court provided that "having considered all briefing, arguments, and exhibits presented, finds that defendant Brian Bardwell has engaged in sanctionable conduct as it relates to this matter. Attorneys' fee[s] to be awarded in a forthcoming entry after the issue has been fully briefed." The court again cited its October 6, 2023 deadline for Bardwell to file briefs in opposition and set another hearing for October 12, 2023.

{¶ **41**} On October 6, 2023, Bardwell filed a motion for a two-day extension of time to file a brief in opposition to the sanctions. No party filed a response, the court did not formally rule on the motion, and Bardwell's brief in opposition was untimely filed on October 10, 2023.

{¶ **42**} Bardwell's brief in opposition was not aimed at any specific party, did not contain any objections to the specific arguments or fee bills submitted, and instead directed the court to be guided by "four general principles," as follows:

> 1. A trial court must impose the least severe sanction consistent with the purpose of the rules of discovery.
>
> 2. Since the principal goal is deterrence, not compensation, a court should impose the least severe sanction likely to deter, which does not mean actual legal expenses.
>
> 3. An individual attorney's ability to pay is a mandatory consideration.
>
> 4. The fees incurred must have been directly caused or attributable to the sanctionable conduct.

{¶ **43**} The scheduled hearing was held on October 12, 2023. There is no transcript of this hearing, and the trial court's journal entry following the hearing explains why and makes a final ruling on the amount of sanctions:

> Attorney conference held in lieu of motion hearing. All named parties and non-parties appear through counsel. Parties do not reach a resolution as it relates to the amount of attorney's fees to be levied against defendant Brian Bardwell to the movants. Parties agree to let the issue rest on the arguments presented at past hearings and the filed briefs. Parties forego oral argument/testimony on the record. Accordingly, pursuant to the hearings conducted on 02/15/2023 and 09/06/2023, as well as the 10/12/2023 conference, in addition to the movants' briefings, affidavits, and exhibits, Defendant Brian Bardwell is sanctioned as follows:

(1) To movant/plaintiff Thomas Williams: attorney's fees in the amount of $18,980.00.

(2) To movant/non-parties Lorain County Board of Commissioners, David Moore, Matt Lundy, James Cordes, and Tom Williams: attorney's fees in the amount of $15,631.50.

(3) To movant/non-parties Ulmer & Berne LLP's and Amanda Martinsek: attorney's fees in the amount of $37,270.50.

(4) To movant/non-party Katherine Loos: attorney's fees in the amount of $8,077.50.

## I. Reconsideration

{¶ 44} Shortly thereafter, Bardwell filed a motion for reconsideration pertaining to the trial court's award of sanctions. In this motion, he specifically argued, for the first time, that Williams's fee award included matters not before the court and that the billed amounts and times were not reasonable. Williams responded, and Bardwell filed a response, raising arguments suggesting that the court never ruled on Williams's Civ.R. 11 motions and that it was his understanding that the September 6 hearing pertained only to motions brought pursuant to Civ.R. 45 and, for the first time, raising the argument that merely supplying an itemized bill is insufficient to establish the reasonableness of the fees and that there was no sworn testimony accompanying the fee bills.

{¶ 45} On October 26, 2023, Bardwell filed an "omnibus motion for reconsideration" that specifically provided that the trial court's award of sanctions was "not directed to the individual amounts each Movant was awarded, but rather the amount of fees awarded as a sanction in the aggregate." The motion included an

affidavit from Bardwell averring that the sanctions exceeded his net worth and that the sanctions would likely push him into filing for bankruptcy and discontinuing to practice law. The affidavit also averred that he desired to address the issue of sanctions at the October 12, 2023 hearing, but the court refused to let him.

{¶ 46} On November 1, 2023, the trial court issued a journal entry indicating:

Defendant Brian Bardwell's motion for reconsideration re the award of fees to Plaintiff Williams' counsel and/or a nunc pro tunc entry, filed 10/17/2023, is denied as moot. Motion is moot as defendant Brian Bardwell filed a superseding omnibus motion for reconsideration on October 26, 2023.

{¶ 47} Bardwell did not respond to, object, or otherwise contest this ruling. Loos, Williams, and Ulmer filed briefs in opposition to Bardwell's omnibus motion for reconsideration. Notably, Loos's brief detailed that Bardwell's affidavit was inaccurate as to the October 12, 2023 hearing and described that "Defendant Bardwell — through counsel — voluntarily declined to contest the reasonableness of the fee requests, and chose not to submit evidence concerning his financial status and ability to satisfy a fee award."

{¶ 48} Bardwell filed a single reply to all oppositions, arguing that the movants erroneously suggested that the burden was on Bardwell to prove the reasonableness of the fees, that the sanctioned parties did not submit sworn evidence to demonstrate their fees, and that itemized legal bills alone are insufficient to establish reasonableness.

**{¶ 49}** On November 11, 2023, Bardwell filed a motion for reconsideration regarding Ulmer's sanctions award, arguing that Ulmer's attorney fees were not directly caused by or attributable to the sanctionable conduct.

**{¶ 50}** On November 14, 2023, the trial court issued a journal entry denying Bardwell's omnibus motion for reconsideration and the motion for reconsideration of Ulmer's attorney fee award. The court reasoned:

> The court finds Defendant [Brian] Bardwell's omnibus motion to reconsider not well-taken.
>
> First, the arguments are untimely. These arguments could and should have been raised in a pre-ruling brief in opposition. Bardwell's brief in opposition was due 10/06/2023. Bardwell untimely submitted a brief in opposition on 10/12/2023 re[garding] attorney's fees. The arguments contained in the present motion could have been addressed in the untimely 10/12/2023 brief in opposition, but they were not.
>
> Further, the issues and arguments raised in Bardwell's omnibus motion for [re]consideration could have been addressed at the motion hearing that was scheduled for 10/12/2023. However, Bardwell (and all other parties and non-parties) agreed to forego oral arguments/testimony on the matter.
>
> Second, even having considered the omnibus motion to reconsider on its own accord, the court finds the issues and arguments raised unpersuasive, non-meritorious, and ultimately not well-taken.
>
> Accordingly, the omnibus motion to reconsider, filed 10/26/2023, and the supplemental motion, filed 11/11/2023, are not well-taken, and the motions are denied.
>
> The award of sanctions issued in this court's order dated 10/13/2023 is maintained.

## J. Judgment on the Pleadings

**{¶ 51}** While these sanctions issues were being sorted out, the court was also deciding the merits of the case through motions for judgment on the pleadings filed by Hung, Williamson, and Bardwell. In August 2023, Williamson and Hung individually filed motions for judgment on the pleadings pursuant to Civ.R. 12(C). Bardwell later filed his own motion for judgment on the pleadings.

**{¶ 52}** The trial court granted the motions for judgment on the pleadings on January 26, 2024, reasoning that Williams's claims were barred by the settlement agreement obtained following the federal case. Williams immediately filed a notice of appeal from the court's decision on the three motions for judgment on the pleadings, which is the companion to the instant appeal and was affirmed separately in *Williams v. Hung*, 2024-Ohio-4682 (8th Dist.) ("*Hung II*").

## K. Bardwell's Appeal

**{¶ 53}** Bardwell's appeal included the trial court's judgments from October 12, 2023; November 1, 2023; and November 14, 2023.

**{¶ 54}** Bardwell's merit brief assigns the following four errors for our review:

1. The trial court erred, as a matter of law, when it granted Williams' Motion to Show Cause finding Attorney Bardwell in contempt of the disqualification order and attorneys' fees sanctions where: (1) the court lacked subject matter jurisdiction over the proceedings in other courts; (2) Attorney Bardwell was not a co-defendant in the other court proceedings; and (3) where this Court reversed the disqualification order.

2. The trial court erred, as a matter of law, when the court improperly failed to require sworn testimony from Movants and shifted the burden

of proof regarding the reasonableness of the attorney's fees from the Movants to Attorney Bardwell.

3. The trial court erred and abused in its [sic] discretion when it "rubberstamped" the Movants' attorney's fees petitions and failed to scrutinize the requested fees to determine causation, *i.e.* whether they were "directly attributable" to the sanctionable conduct.

4. The trial court abused its discretion when it failed to consider evidence of Attorney Bardwell's ability to pay the sanctions awarded.

## II. Law and Analysis

{¶ 55} For ease of discussion, we elect to address Bardwell's assignments of error together and out of order where necessary.

{¶ 56} Our review of a trial court's order granting sanctions, including attorney fees, for failing to comply with the discovery rules is reviewed for an abuse of discretion; trial courts have broad discretion to fashion appropriate sanctions for a party's failure to comply with the discovery rules. *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 260 (1996); *see also Whitman v. Whitman*, 2023-Ohio-2732, ¶ 31 (5th Dist.). Likewise, a trial court's decision on a motion for reconsideration of an interlocutory order is reviewed for an abuse of discretion. *Picciuto v. Lucas Cty. Bd. of Commrs.*, 69 Ohio App.3d 789, 797 (6th Dist. 1990). "To prove abuse of discretion, the appealing party must show that the lower court's decision to grant attorney fees was unreasonable, arbitrary, or unconscionable." *State ex rel. Davis v. Metzger*, 2016-Ohio-1026, ¶ 10, citing *State ex rel. Cydrus v. Ohio Pub. Emps. Retirement Sys.*, 2010-Ohio-5770, ¶ 28.

{¶ 57} As for demonstrating the reasonableness of the fees, the party seeking attorney fees bears the burden of establishing the reasonableness of the fees. *Bales v. Forest River, Inc.*, 2019-Ohio-4160, ¶ 19 (8th Dist.).

{¶ 58} The Ulmer parties and Lorain County sought sanctions in the form of attorney fees pursuant to Civ.R. 45(E). Civ.R. 45(E) provides that "[t]he court from which a subpoena was issued may impose upon a party or attorney in breach of the duty imposed by division (C)(1) of this rule an appropriate sanction, which can include, but is not limited to, lost earnings and reasonable attorney's fees." Civ.R. 45(C)(1) requires a party or attorney issuing a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to a subpoena." Though the "appropriate sanction[s]" under Civ.R. 45(E) are discretionary and not limited to attorney fees, the trial court in this case elected to award the attorney fees submitted by each party. Williams, through his various motions for sanctions, sought attorney fees pursuant to Civ.R. 45 as well as Civ.R. 11.

## A. Burden of Demonstrating Reasonableness of Fees

{¶ 59} Within his second assignment of error, Bardwell contends that the trial court ignored the law requiring the party seeking fees to establish the reasonableness of the requested fees. Bardwell cites *Metron Nutraceuticals, L.L.C. v. Thomas*, 2022-Ohio-79, ¶ 36 (8th Dist.), which relies on *R.C.H. Co. v. 3-J Machining Serv.*, 2004-Ohio-57, ¶ 25 (8th Dist.). In *3-J Machining*, this court noted that evidence establishing the reasonableness of requested attorney fees "may take the form of testimony, affidavits, answers or other forms of sworn evidence. As

long as sufficient evidence is presented to allow the trial court to arrive at a reasonable attorney-fee award, the amount of the award will not be disturbed absent an abuse of discretion." And, in *Metron*, this court noted that "an itemized bill alone is insufficient to establish the reasonableness of the requested attorney fees." *Metron* at ¶ 36.

{¶ 60} Bardwell argues, "Of the four Movants (Loos, Plaintiff Williams, Ulmer Berne, and Lorain County), the only Movant who presented sworn evidence, i.e. an Affidavit, supporting the fee request was counsel for Movant Loos."

{¶ 61} Bardwell, however, seems to ignore that after the September 6, 2023 hearing, Ulmer submitted an affidavit establishing the reasonableness of the fees. Bardwell's brief in opposition to all parties' motions for sanctions addressed the sanctions in the aggregate and did not specifically contest Ulmer's fees, though these arguments were argued before the trial court during the September 6, 2023 hearing. Accordingly, we find no merit to Bardwell's contention that Ulmer did not submit "sworn evidence" demonstrating the reasonableness of its fees after Bardwell contested them at trial.

{¶ 62} Regarding Lorain County's and Williams's motions for attorney fees, we note that Bardwell never specifically lodged an objection to or contested the reasonableness of the fees. Indeed, at the September 6, 2023 hearing, Lorain County, through its attorney, specifically acknowledged that Bardwell had never contested the amount or reasonableness of the fees that it sought:

[LORAIN COUNTY'S COUNSEL]:  This is [Lorain County's counsel] on behalf of the Lorain County Commissioners and the individual non-parties here.  I wanted to just for the record purposes incorporate and submit the arguments based on the motion prior submitted and the oral argument in the transcript from the February 15th, I think, hearing, whenever that was.  That's part of the record now.

In addition, I would like to submit the fee bill that's part of the motion that [Bardwell's counsel] should have.

(09/06/2023, tr. 39.)

{¶ 63} During the September 6, 2023 hearing, Bardwell challenged whether Ulmer's submitted bills were tied to this case since Ulmer's counsel was also representing Ulmer in the Lorain County lawsuit and the bills as submitted were coded under the Lorain County matter.  Ulmer's counsel admitted that it did not create a separate matter for this litigation and placed the billing into the billing for the Lorain County lawsuit but that there was no "double billing," as Bardwell's counsel was concerned about.  Williams's counsel and Lorain County's counsel were present at the hearing, but neither the sanctions nor the bills were specifically contested at the hearing in the manner that Ulmer's were.  In fact, the following exchange occurred during the hearing:

THE COURT:  Is there a written motion in the — to their demand for the damages, the bills?

[BARDWELL'S COUNSEL]:  Not in terms of the fee petition, Your Honor.

THE COURT:  All right.  Well, unless you have — I've given you a chance anyhow.  If you can show a fundamental weakness, like, you know, it's related to two matters that's already paid for by the other matter or something.  If you have some argument, give it.  Now's the time to do it.  We're here now on the damages issue.

(9/6/2023, tr. 28.)

{¶ 64} Bardwell proceeded to, for the second time at the hearing, address the Ulmer bills and questioned Williams regarding whether his bills included fighting removal of the matter to federal court. Williams's counsel clarified that he had asked for sanctions for the frivolous removal to federal court, but was denied them, so he was not asking for them as part of these damages. Bardwell's counsel then returned to contesting the Ulmer damages, explaining that he felt that it was improper that they charged for monitoring the docket after the case was removed because, at that point, the motions to quash were already granted. Moreover, Ulmer was involved in the Lorain County lawsuit, which was still ongoing, so the docket monitoring could have also benefitted them in that case.

{¶ 65} The court then presented Bardwell with another chance to contest the damages and afforded Bardwell an opportunity to file written objections, to which Bardwell's counsel responded, "That's fair, Your Honor." (Tr. 37.) The trial court asked all parties if two weeks would be enough time for written responses, stated that it would review all submitted written materials and transcripts, and concluded, "I don't see any further need to take evidence on the damages. I have evidence on the damages. If you want to add evidence, go ahead." (Tr. 38.)

{¶ 66} The court also stated, "I don't see any need to trot up to the witness stand." (Tr. 38.) Nobody objected, including Bardwell. This would have been the opportunity for Bardwell to advocate that the evidence of attorney fees needed to be sworn. It is not shifting the burden to Bardwell. All of the parties appeared to come

prepared to discuss the amount and reasonableness of their fees but were not met with any opposition by Bardwell at the hearing; when Bardwell filed his brief in opposition to the amount and reasonableness of the sanctions, in lieu of attacking the individual movants and their requested fees, he chose to address all of the issues in the aggregate. Then, at the October 12, 2023 hearing, the parties were again, presumably prepared to take the stand and testify as to their fees but rightfully believed that there was no opposition to the amounts of fees because Bardwell's brief in opposition was tailored to the aggregate of fees sought and did not individually address any of the movants' fee bills.

{¶ 67} Rejecting an argument under the waiver doctrine "protect[s] the role of the courts and the dignity of the proceedings . . . by imposing upon counsel the duty to exercise diligence in his or her own cause and to aid the court rather than silently mislead it into the commission of error." *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 81 (1997), citing *State v. Williams*, 51 Ohio St.2d 112, 117 (1977). Additionally, we need not consider an error that the complaining party "could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *Williams* at *id.*

{¶ 68} We find that Bardwell's counsel acquiesced to any error that the trial court may have committed, including any deficiencies in requiring sworn evidence. At no point during any of the three separate hearings addressing sanctions and the damages did Bardwell argue that Williams or Lorain County failed to introduce

sworn evidence.[2]  When Bardwell finally raised the issue in one of his numerous motions for reconsideration, the trial court did not choose to exercise its discretion and revisit the issue.  Accordingly, we reject Bardwell's arguments pertaining to the trial court erroneously shifting the burden to him to prove reasonableness and Bardwell's arguments that evidence must be sworn.

{¶ 69} We therefore overrule Bardwell's second assignment of error.

## B. Causation/Allegedly Unrelated Fees

{¶ 70} Bardwell's third assignment of error suggests that the trial court merely "rubberstamped" the fee bills and did not scrutinize the fees and determine whether they were "directly attributable" to the sanctionable conduct.

{¶ 71} First, Bardwell cites to *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register*, 2007-Ohio-5542, ¶ 24, as standing for the proposition that the attorney fees requested as sanctions must be directly caused by the sanctionable conduct.

{¶ 72} Bardwell specifically contests that the trial court "abdicated its responsibilities in this case and even awarded Plaintiff Williams fees that were unrelated to the Motion for Sanctions before the court."  In making this argument,

---

[2] We also note that some of Williams's fees were sought pursuant to Civ.R. 11.  This court has held that "[w]e have rejected this type of argument in the context of Civ.R. 11, finding that the trial court has no obligation to hear sworn evidence in awarding attorney fees." *In re Estate of Abraitis*, 2017-Ohio-5577, ¶ 30 (8th Dist.), citing *Brady v. Hickman & Lowder Co.*, 2004-Ohio-4745, ¶ 30 (8th Dist.).  Nonetheless, given our choice to invoke the waiver doctrine, we need not address the distinction between fees sought under Civ.R. 45 versus Civ.R. 11.

Bardwell states that the trial court never ruled on each of Williams's specific motions for sanctions and believed that both the September 6, 2023 hearing and the October 12, 2023 hearing were just for sanctions awarded as a result of the subpoenas. In other words, Bardwell contests all of the charges on Williams's fee bill that are unrelated to the improper subpoenas, which includes sanctions related to the "ghostwritten" brief and the protective order. Bardwell's arguments, however, are directly contradicted by the record.

{¶ 73} First, during the February 15, 2023 sanctions hearing, the trial court itself went into the hearing believing that only the motions from Loos, Lorain County, and Ulmer would be heard. However, at this point, Williams's counsel had already requested sanctions for the improper subpoenas, the "ghostwritten" motion, and the protective order, and that was brought to the trial court's attention:

THE COURT: What motions are you prepared to defend here today?

[BARDWELL'S COUNSEL]: Well, again, the Ulmer Berne Plaintiff and Ms. Loos's motion for sanctions regarding the subpoenas which were quashed.[3]

I'm also prepared to address — [Williams's counsel] filed a second motion for protective order, and that was in the context of what his other motion for sanctions was. I opposed it, and I think you went ahead and granted the second motion for protective order, but I'm prepared to address that as well.

THE COURT: Well, if I granted it, why are we addressing it?

---

[3] There was earlier conversation on the record about how Lorain County's motion for fees was originally made orally back in December 2022, but an accompanying brief was never filed. The trial court informed Lorain County that if it was seeking sanctions, it would need to seek those in writing out of fairness to Bardwell.

> [BARDWELL'S COUNSEL]: Because he appended his motion for —
> that's what he's asking for. He's asking for sanctions relative to the
> second motion for protective order.
>
> THE COURT: So my apologies for bad communication. I did not
> appreciate that all of these motions for sanctions were set today. It's
> fine. I'm glad that they are rather than multiple hearings.

(02/15/2023, tr. 14-15.)

{¶ 74} Second, Williams submitted his actual fee bill spelling out the specific motions and activities for which he was requesting sanctions in August 2023, before the September and October hearings and before Bardwell was given an opportunity to file a brief in opposition to the fees. At no point was the relatedness as it pertained to Williams's fee bills contested.

{¶ 75} Moreover, we cannot find any instance on the record that would lead Bardwell to believe that the sanctions hearings that commenced in September were solely for the sanctions awarded pursuant to the improper subpoenas. Williams's motions encompassed under the fee bill were related to the motions filed before the February 2023 hearing, where Bardwell conceded that he was ready to defend *all* pending sanctions motions. Even though Williams filed additional motions, the court never ruled on these motions or awarded fees beyond Williams's requested fees, which only covered hours performed until February 2023. Williams never contested or chose to further pursue any sanctions motions filed after February 2023. When the court granted the motions for sanctions after Bardwell asked for a specific ruling on the merits of the sanctions, the trial court indicated that it was granting Williams's motions for sanctions and stated the date that the most recent

motion for sanctions was filed, which was the motion to show cause in August 2023 stemming from Bardwell's violation of the court's disqualification order. While we agree that this most recent show-cause motion was not adjudicated or rewarded, any error therefrom would be harmless because Williams's fee bill did not contain any time entries stemming from these disqualification entries. Again, Williams's fee bill only encompassed work performed from December 2022 through February 2023, and Williams did not seek fees related to any conduct thereafter; thus, no fees for conduct after February 2023 were awarded.

{¶ 76} Moreover, the record does not support Bardwell's contention. The court was intent on adjudicating all motions for sanctions, not just the ones relating to the motion to quash, as indicated by the journal entry following the September 2023 hearing, which provided that "case called for hearing on *all motions for sanctions*." (Emphasis added.)

{¶ 77} Bardwell also contests, as he did at the trial-court level, the reasonableness of Ulmer's requested fees for monitoring the federal court docket after the case was removed. He suggests that the fee bills submitted by Ulmer contained "insufficient information for the trial court to discern whether the fees were caused by or attributable to the Motion to Quash and pursuit of sanctions."

{¶ 78} These objections to Ulmer's fees were well briefed and thoroughly discussed and then brought up again to the trial court in Bardwell's motions for reconsideration. The trial court determined that Ulmer's fees were reasonable after the argument that they were not reasonable was presented by Bardwell multiple

times.  We take particular notice of Ulmer's explanation during the September 6, 2023 hearing:

> [ULMER'S COUNSEL]:  I had to file a reply brief.  We had to come down here for at least two hearings, then they remove [to federal court].  You know, so this idea that he gets a cut off the moment the motion to quash is granted is preposterous because, again, this all flows from Mr. Bardwell's improper conduct here.  And because we were not getting notices because we weren't parties in this case, I absolutely do believe that it's within the standard of care a lawyer that defense lawyers in legal malpractice actions that I need to monitor the docket about what's going on.  It's a very small percentage from the time of the removal back here, 10 hours or so, from the total amount of damages . . . .

(09/06/2023, tr. 33-34.)

{¶ 79} We are unpersuaded by Bardwell's argument that the trial court abused its discretion in awarding fees for "unrelated" conduct or conduct that was "insufficiently detailed" within Williams's and Ulmer's fee bills.  Ulmer felt that it was necessary for the representation of its clients, Bardwell disagreed, and the court ultimately agreed with Ulmer after reviewing both arguments.  We cannot say that this constitutes an abuse of discretion.

{¶ 80} We therefore overrule Bardwell's third assignment of error.

### C. Disqualification and Contempt

{¶ 81} We next address Bardwell's first assignment of error that contests the trial court's judgment finding Bardwell in contempt of the court's disqualification order and awarding sanctions under multiple legal theories.  We find, however, that

based on the affirmance in *Hung II*, and our disposition of the previous assignments of error[4] and in consideration of Williams's fee bill, this assignment of error is moot.

{¶ 82} In granting the three pending Civ.R. 12(C) motions, the trial court clarified that

> this ruling and order are not inconsistent with any appellate court case or decision as it relates to any and all pending collateral issues in this matter which are or may be up on appeal. Namely, in No. CA-23-112645, the Eighth District reversed and remanded the trial court's decision to disqualify defendant-attorney Brian Bardwell from serving as counsel of record for co-defendant Williamson in the present action. However, this court's ruling on the pending motions for judgment on the pleadings does not bear any relevance and has no consequence as it relates to Williamson's initial choice of counsel, co-defendant Brian Bardwell. As demonstrated by the pleadings themselves, Plaintiff's claims in the present suit have no merit irrespective of Williamson's choice of counsel. Accordingly, Plaintiff's motion to comply with court of appeals mandate, filed 01/25/2024, is denied as moot.

{¶ 83} There is no dispute that *Hung I* reversed the trial court's determination disqualifying Bardwell. It is impossible to issue or uphold sanctions for an order that no longer exists.

{¶ 84} But, in reviewing the fee bill submitted by Williams's counsel, no fees or damages were sought pursuant to contempt of the disqualification order. Counsel for Williams's attorney-fee bill includes billing that is all easily matched to the docket and the record before us. We are able to discern that Williams's requests for fees are

---

4 Bardwell once again argues that the court's journal entry indicating that it was granting the recently filed motion for sanctions, which happened to be related to contempt of the disqualification order in August 2023, was improper. We addressed this briefly in the previous assignment of error. However, we again note that even though the order was granted, Williams's attorney did not seek fees stemming from the disqualification order and his fee bill is sufficient for us to determine what motions/events he sought fees for. None of the fees sought occurred after February 2023.

related to (1) the subpoenas issued to both Williams and the third parties; (2) corresponding with the third parties that were the subject of these subpoenas and otherwise had no other involvement in this matter; and (3) various alleged violations of Civ.R. 11 encapsulating conduct that Bardwell engaged in *prior* to the court formally disqualifying him from the matter, which includes the "ghostwritten" motion.

{¶ 85} Accordingly, we find that Bardwell's first assignment of error is moot because it is impossible to be in contempt of an order that does not exist. Moreover, none of the sanctions awarded stem from disobedience of the disqualification order.

{¶ 86} Based on the foregoing, we disregard Bardwell's first assignment of error as moot.

### D. Ability to Pay

{¶ 87} In his fourth assignment of error, Bardwell argues that the trial court abused its discretion in failing to consider evidence of Bardwell's ability to pay the sanctions awarded. The first two issues outlined in Bardwell's brief again argue that the court should have imposed the "least severe sanction" and that the trial court should have considered that the sanctions were for deterrence rather than compensation of legal expenses. We reiterate that both of these are within the discretion of the trial court, and Bardwell, in regurgitating law that he put before the trial court, has not persuaded us that the trial court abused its discretion in awarding the amount of sanctions that it did.

{¶ 88} Turning to the third issue within this assignment of error, Bardwell argues that the trial court abused its discretion in failing to consider that an individual attorney's ability to pay is a mandatory consideration.

{¶ 89} Bardwell cites to several federal cases which review the ability to pay under the federal civil rules, as well as an Eighth District case that pertinently provides:

> While there is no single right amount to fine a pro se litigant for violating Civ.R. 11, and much must be left to the sound judgment of the trial court, which is most familiar with the case and counsel, there still must be a method of getting to the amount of the sanction, including a fine. Moreover, this method should be characterized by intellectual discipline, which here means consideration of the appellant's ability to pay . . . .

*Sawchyn v. Middleburg Hts.*, 1995 Ohio App. LEXIS 4288, *30 (8th Dist. Sept. 28, 1995), citing *Clark v. Hawkes Hosp. of Mt. Carmel*, 9 Ohio St.3d 182 (1984); *Doe v. White*, 97 Ohio App.3d 585 (2d Dist. 1994).[5]

{¶ 90} *Sawchyn* specifically says that the trial court *should* consider the ability of the sanctioned party to pay. It does not mandate or require it as Bardwell's citations to federal cases suggest. He has not cited to an Ohio case that stands for this proposition.

{¶ 91} Bardwell also points us to R.C. 2315.21(D)(2)(b), which governs punitive damages awarded in a trial as opposed to sanctions awarded for

---

[5] *Doe* addressed punitive damages awarded following a trial, which is distinguishable from sanctions, but nonetheless specifically held that "[a]lthough evidence of a defendant's net worth is relevant to determining a proper amount of punitive damages, the trier of fact is not required to consider such evidence before awarding punitive damages to the prevailing party." *Doe* at 594.

misconduct and provides that punitive damages shall not exceed ten percent of the individual's net worth when the tort was committed. We are not persuaded that this is applicable to the instant matter.

{¶ 92} Additionally, Bardwell did not submit any evidence of his ability to pay until after the trial court awarded damages, despite the opportunity to present this with an affidavit indicating as much numerous times *prior* to the trial court issuing sanctions. It was not until the motion for reconsideration was filed that Bardwell provided an affidavit demonstrating his financial status.

{¶ 93} Based on the foregoing, we overrule Bardwell's fourth assignment of error.

### III. Conclusion

{¶ 94} Bardwell has not demonstrated that the trial court abused its discretion in arriving at the attorney-fee award based on Bardwell's sanctionable conduct.

{¶ 95} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, JUDGE

MICHELLE J. SHEEHAN, P.J., and
EMANUELLA D. GROVES, J., CONCUR